Vincent **MARQUEZ,** Plaintiff–Appellee,

v.

**R J GUTIERREZ,** Defendant–Appellant,

and

**James Gomes; Theo White, Warden; M Bishoff; D Armendariz; Suzan Hubbard, Warden; S J Vance; C Johnson; L Dr Helder; W V Sandt; D H Moehring; E A Connolly; S Williams; George M Galaza; L Loo; R Harway; K Kellawan; B Bynam, Defendants.**

No. 02–15017.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2003.

Filed March 6, 2003.

Stephen W. Perkins, Deputy Attorney General, Sacramento, CA, for the defendant-appellant.

Kenneth C. Mennemeier and Kristine L. Burks, Mennemeier, Glassman & Stroud, Sacramento, CA, for the plaintiff-appellee.

Before TROTT, RYMER, and TALLMAN, Circuit Judges.

## OPINION

RYMER, Circuit Judge:

Correctional Officer Richard Gutierrez appeals the district court's denial of his motion for summary judgment on the ground of qualified immunity, which he filed in defense of a § 1983 action brought by an inmate, Vincent Marquez, whom he shot in the leg during a prisoner melee at the California State Prison–Sacramento (CSPS). The district court found triable issues of fact regarding the need for this force and the threat that Gutierrez reasonably perceived, leading it to conclude that genuine factual disputes exist as to Marquez's excessive force claim under the Eighth Amendment *and* as to Gutierrez's entitlement to qualified immunity. However, in doing so the district court collapsed the qualified immunity inquiry and the constitutional inquiry rather than treating them separately, as *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir.2001), and *Estate of Ford v. Ramirez–Palmer*, 301 F.3d 1043, 1050–53 (9th Cir.2002), which applies *Saucier* to the Eighth Amendment but was rendered after the district court's decision in this case, instruct. Analyzing the inquiries separately, we conclude that, assuming the facts in Marquez's favor, an Eighth Amendment violation would exist but a reasonable officer in Gutierrez's position would have believed that his response was a good faith effort to restore discipline. Accordingly, we reverse.

## I

A disturbance broke out in the prison yard at CSPS on August 28, 1995. Marquez claims that he was attacked by a group of unarmed inmates, but took no violent action himself. An inmate, J. Perez, ended up lying on the ground while being kicked in the head by two other inmates, one of whom (Bruno Garcia) later said that he "was the one they should have shot." Marquez states that he was standing three to four feet away from Perez. He also states that Perez sought to defend himself, and was not unconscious as Gutierrez thought. Gutierrez was stationed in a guard tower located some 360 feet away from the disturbance. He yelled "Yard down!" once he saw the fight erupt, but none of the combatants complied with his order or with a similar order made by a different officer. He then saw Perez lying on the ground, being kicked in the head with hard boots by two inmates, one of whom he claims was Marquez. Gutierrez yelled "Get down!" to no result, and then intentionally shot Marquez in the leg. Marquez suffered a fractured femur, and brought suit charging Gutierrez with excessive use of force in violation of the Eighth Amendment.

Gutierrez moved for summary judgment, which the district court denied. Gutierrez timely brought this interlocutory appeal.

## II

Marquez questions our jurisdiction to review the district court's denial of qualified immunity based on the existence of a triable issue of fact regarding Gutierrez's intent. Intent is an element in this case because "[w]here a prison security measure is undertaken to resolve a disturbance ... that indisputably poses significant risks to the safety of inmates and

prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). But even when intent is an element of the constitutional tort, we have jurisdiction to determine whether there is a genuine issue of material fact as to it. *Jeffers*, 267 F.3d at 910. Thus, although the parties dispute the identity of the inmate who kicked Perez, and what Gutierrez saw, we may assume these disputed facts in Marquez's favor in order to decide whether qualified immunity was properly denied. *Id.*

### III

■ Following *Saucier, Jeffers,* and *Ford,* we first determine whether the facts, viewed in the light most favorable to Marquez, show that Gutierrez violated Marquez's Eighth Amendment rights. Marquez argues that the test set out in *Whitley* applies. We agree. Therefore, to decide whether a particular use of force evinces wantonness, we consider the objective need for force, the relationship between any such need and the amount of force actually used, the threat reasonably perceived by the correctional officer, whether the officer took efforts to temper the severity of his response, and the extent of the inmate's injury. *Whitley*, 475 U.S. at 320–21, 106 S.Ct. 1078. Mindful of the Supreme Court's admonition that we must be hesitant "to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance," *id.* at 320, 106 S.Ct. 1078, still we believe that on Marquez's version of the facts the Eighth Amend-

ment would be violated. To shoot a passive, unarmed inmate standing near a fight between other inmates, none of whom was armed, when no inmate was in danger of great bodily harm, would inflict unnecessary and wanton pain.

### IV

■ Even though there would be a constitutional violation if Marquez were to prove the facts that he posits, Gutierrez may nevertheless be entitled to qualified immunity if a reasonable officer could have believed his conduct was lawful. The qualified immunity inquiry has two parts: "(1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?" *Jeffers*, 267 F.3d at 910 (quoting *Browning v. Vernon*, 44 F.3d 818, 822(9th Cir.1995)) (internal quotation marks omitted).

Gutierrez urges us to ask whether it was clearly established in 1995 that the use of firearms by a correctional officer during a violent prison disturbance to curtail life-threatening conduct was unlawful. However, we have already held in *Jeffers*, which also involved the shooting of an inmate during a prison disturbance, that the law governing prison officials' conduct was clearly established in *Whitley*. *Jeffers*, 267 F.3d at 910–11. *Whitley* was decided in 1986, so its rule was the controlling rule when the incident in this case occurred.

Gutierrez argues that he relied on the prison's use of force policy (the same policy as in *Jeffers*), which authorizes armed post officers to use firearms as a last resort if great bodily injury is occurring; that he was cleared of wrongdoing by the Departmental Shooting Review Board; and that a reasonable officer would believe that relying on the prison's shooting policy

was lawful. He also maintains that the disputed facts are immaterial, in that it is the fact that Perez was being kicked that matters, not the identity of who was doing the kicking.

■ Marquez contends that Gutierrez could not have reasonably believed that his decision to shoot Marquez was lawful because he was not kicking Perez, because Perez was conscious and able to defend himself, and because Garcia admits that he "was the one they should have shot." Further, Marquez argues that a prison official cannot act maliciously and sadistically while, at the same time, reasonably believing that his actions conform to clearly established law. However, this argument is the same argument that the Supreme Court rejected in *Saucier*, and that we rejected in *Estate of Ford*. "Courts may not simply stop with a determination that a triable issue of fact exists as to whether prison officials [acted unconstitutionally]; instead, the qualified immunity inquiry is separate from the constitutional inquiry." *Estate of Ford*, 301 F.3d at 1053. Accordingly, Gutierrez's claim of qualified immunity is not defeated simply because a triable issue of fact exists as to whether his decision to shoot Marquez was malicious.

Even if Gutierrez's beliefs that Marquez was involved in the kicking incident and that Perez was in danger of serious harm were mistaken, he can still be entitled to qualified immunity. A reasonable official standing where Gutierrez was standing—that is, in a tower located 360 feet away from the disturbance—could perceive that both Marquez and another inmate were kicking Perez and threatening Perez with serious injury or death, and that Perez was not capable of protecting himself, even if no kick was actually administered by Marquez. The scenario may look different when gauged against the "20/20 vision of hindsight," but we must look at the situa-

tion as a reasonable officer in Gutierrez's position could have perceived it. *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151(quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)) (internal quotation marks omitted). In that light, we believe that a reasonable officer could believe that shooting one inmate in the leg to stop an assault that could have seriously injured or killed another inmate was a good faith effort to restore order, and thus lawful. *Cf. Jeffers*, 267 F.3d at 912(holding that under *Whitley*, "a prison guard is permitted to use deadly force 'in a good faith effort to maintain or restore discipline' ") (quoting *Whitley*, 475 U.S. at 320, 106 S.Ct. 1078).

Accordingly, Gutierrez is entitled to qualified immunity.

REVERSED.