Otis Ray **GLENN,** Plaintiff(s),

v.

**M. BERNDT,** et al., **Defendant(s).**

No. C 02–4674 CRB(PR).

United States District Court, N.D. California.

Nov. 3, 2003.

Denise A. Yates, Cal. Attorney General's Office, San Francisco, CA, for defendants.

Otis R. Glenn, Crescent City, CA, pro se.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BREYER, District Judge.

Plaintiff, a prisoner at Pelican Bay State Prison ("PBSP"), filed this pro se civil rights action for damages under 42 U.S.C. § 1983 alleging that on February 8, 2000, while returning to his cell from work during a "lockdown" due to a "white & black war," Correctional Officer M. Kelly "let two white Ad. Seg. inmate[s] out on [him]" and he was assaulted. Plaintiff further alleges that Correctional Officers M. Berndt, M.D. Yax, R. Kirkland, J. Morrison, R. Drown, E. Young, A. Somera, R. Shellabarger, J. Zucco, A. Paul, T. Wadsworth, S. Preston, T. Ryan and C. Arispe stood by and watched him fight one of the white inmates.

Per order filed on January 29, 2003, the court found that plaintiff's allegations, when liberally construed, stated a cognizable Eighth Amendment claim for deliberate indifference to safety and ordered the

United States Marshal to serve defendants. Defendants now move for dismissal/summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. They also claim that they are entitled to qualified immunity. Plaintiff has filed an opposition and defendants have filed a reply.

## DISCUSSION

### A. *Standard of Review*

■ Dismissal for failure to state a claim is proper where, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court must accept as true all material allegations in the complaint, but it need not accept as true "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994).

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

### B. *Analysis*

■ The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833, 114 S.Ct. 1970. However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Id.* at 834, 114 S.Ct. 1970. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to the prisoner's safety. *Id.*

■ In order for a prison official to be liable for failure to prevent harm, a prisoner must show: (1) that he was incarcerated under conditions posing a substan-

tial risk of serious harm, *id.*; and (2) that the prison official knew of and disregarded such a risk, *id.* at 837, 114 S.Ct. 1970. The prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* He need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault." *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir.1986). But he must have more than a "mere suspicion" that an attack will occur. *Id.*

 Showing that the prison official knew of a substantial risk of serious harm is not enough without showing indifference by that official. A prison official "who actually knew of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 844–45, 114 S.Ct. 1970 (citations and internal quotation marks omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 845, 114 S.Ct. 1970.

### 1. *Claim against M. Kelly*

 Defendant M. Kelly contends that he was not deliberately indifferent to plaintiff's safety because the undisputed facts show that he released the white inmates "accidentally," and that he took immediate steps to try to control the situation and avert an attack.

In support, Kelly submits a declaration and documentary evidence showing the following facts: On February 8, 2000, Kelly was assigned to Post 37469 B7 Control. At approximately 6:35 p.m., as the dining hall inmate workers were returning to B7, Kelly let them into the unit and closed the dining hall door. Kelly then checked C Section for inmates out of their tier before letting the dining hall workers into C Section. He noted an inmate in the shower, but after seeing that the shower door was closed and locked, he proceeded to open the C Section rotunda door and let in the dining hall workers. The dining hall workers—inmates Valenciana, Phonchanthasone, Tubbs, Huntsinger and plaintiff—then began walking to their cells.

Kelly let inmate Huntsinger enter his cell and closed the door. Inmate Valenciana then stopped in front of cell # 224. Kelly opened cell # 224 to let Valenciana in, but as the door opened, Valenciana moved away from cell # 224. Inmate Pesicka then looked out of cell # 224. Kelly realized that he had opened the wrong cell door.

Before Kelly could close the door to cell # 244, Pesicka came out of the cell, turned to his left and ran down the tier towards a black inmate. Inmate Frankie also came out of the cell before Kelly could close the door and followed Pesicka. Pesicka and Frankie chased another inmate named Pitts down the stairs and into the C Section day room area. Kelly pushed his personal alarm button and ordered the inmates to get down. They did not comply.

Kelly picked up the "federal gas gun" and again ordered the inmates to get down. When the inmates again failed to comply, Kelly fired one round. Kelly again ordered the inmates to get down and again they refused.

Kelly went and retrieved some Oleoresin Capsicum ("pepper spray"). When he re-

turned, he noticed that inmate Tubbs and plaintiff were hitting and kicking inmate Frankie in the head and upper body. Inmates Pesicka and Appleberry were wrestling and punching each other on the floor.

Kelly ordered the inmates to get down and they again failed to respond. He then aimed the pepper spray at inmate Tubbs and plaintiff. Kelly gave another "get down" order which the inmates did not follow, but they stopped fighting when the pepper spray took effect. However, they started towards each other soon thereafter.

Kelly went to the gun rack and picked up the "L–8 federal gas gun." After loading it, he returned to the scene and ordered the inmates to get down. The inmates separated and began to comply with his orders.

Kelly then opened the C Section rotunda door and let in responding staff. As staff entered, they ordered the inmates to get down and they slowly complied.

Kelly later learned that cell # 232 was also opened. It appears that when he put inmate Huntsinger into his cell, he had his right hand on the close button to cell # 232. He inadvertently opened cell # 224 with his left hand and must have leaned forward with his right hand and also opened cell # 232. Kelly did not intentionally open cell # 224 or cell # 232.

Under Kelly's version of the facts, Kelly was not deliberately indifferent to petitioner's safety. His "accidental" opening of cells # 224 and # 232, although regrettable, cannot be characterized as wanton infliction of unnecessary pain in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (explaining that an accident does not constitute deliberate indifference because it cannot be characterized as wanton infliction of unnecessary pain). Moreover, as soon as the white inmates were accidentally released, Kelly "responded reasonably to the risk [of an attack by taking immediate and multiple steps to try to control the situation], even if the harm ultimately was not averted." *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970.

Plaintiff sets forth no "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Rather, he argues that Kelly was deliberately indifferent because he "didn't do his job," and that Kelly's admitted mistakes amount "to admitted negligence in the least." Unfortunately for plaintiff, his mere insistence that Kelly was deliberately indifferent to his safety because he did not do his job properly is not enough to create a genuine issue for trial and defeat Kelly's motion for summary judgment. *See Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir.1988) (conclusory allegations insufficient to defeat summary judgment). And, contrary to plaintiff's assertions, Kelly's "mistakes" amount to negligence and/or gross negligence "at most," not "in the least," and this is not enough for liability under 42 U.S.C. § 1983 in the prison context. *See Farmer,* 511 U.S. at 835–36 & n. 4, 114 S.Ct. 1970 (neither negligence nor gross negligence is actionable under § 1983 in the prison context). Kelly is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).[1]

1. Plaintiff's contention that Kelly was deliberately indifferent because he waited too long to open the C Section rotunda door and let in responding staff does not compel a different result. The undisputed facts show that Kelly responded reasonably to the risk of an attack by taking immediate and multiple steps to try to control the situation. That Kelly perhaps should have opened the rotunda door and let in responding staff a few moments earlier, rather than continued his efforts to control the situation, does not show that he was deliberately indifferent to plaintiff's safety. At

## 2. *Claim against other defendants*

 Defendants M. Berndt, M.D. Yax, R. Kirkland, J. Morrison, R. Drown, E. Young, A. Somera, R. Shellabarger, J. Zucco, A. Paul, T. Wadsworth, S. Preston, T. Ryan and C. Arispe contend that they were not deliberately indifferent to plaintiff's safety because the undisputed facts show that they responded reasonably to Kelly' personal alarm and the inmate fighting in B7.

In support, they submit several declarations and documentary evidence showing the following facts: On February 8, 2000, at approximately 6:35 p.m., defendants responded to an audible personal alarm in B7. When they arrived, they found that the C Section rotunda door was closed and waited for the door to be opened. They observed several inmates fighting and, from the rotunda door, yelled at the inmates to "Get down! Get down!" The inmates ignored the commands. One of the responding officers—R. Shellabarger—administered a burst of pepper spray through a door cuff port, but the burst was ineffective due to the distance between the door and the inmates. As soon as the door opened, defendants entered C Section and the inmates stopped fighting.

 Plaintiff does not dispute that the responding officers found the C Section rotunda door closed, or that they entered C Section and stopped the fighting as soon as the door opened. He nonetheless claims that the responding officers were deliberately indifferent to his safety because they "could and should have keyed the door open and entered C Section" to break up the fighting. Perhaps, as plaintiff maintains, the officers should have made additional efforts to enter C Section earlier. However, their failure to do so during the few minutes they waited until the door opened cannot be construed as more than negligence and/or gross negligence not actionable under § 1983 in the prison context. *See Farmer,* 511 U.S. at 835–36 & n. 4, 114 S.Ct. 1970. Plaintiff sets forth no specific facts compelling a different conclusion. *See* Fed.R.Civ.P. 56(e). Defendants are entitled to summary judgment as a matter of law. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.[2]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (doc # 21) is GRANTED.

The Clerk shall enter judgment in favor of defendants and close the file. SO ORDERED.

---

minimum, Kelly is entitled to qualified immunity because a reasonable officer could have believed that his response was lawful. *See Marquez v. Gutierrez,* 322 F.3d 689, 692–93 (9th Cir.2003) (prison official entitled to qualified immunity if a reasonable officer could have believed that his conduct was lawful).

2. In addition, the undisputed facts make clear that the responding officers are entitled to qualified immunity as a matter of law. A reasonable officer could have believed that waiting to enter C Section until Officer Kelly opened the door after exhausting his efforts to control the situation with the gas gun and pepper spray was lawful. *See Marquez,* 322 F.3d at 692–93 (prison official entitled to qualified immunity if a reasonable officer could have believed that his conduct was lawful); *see also Saucier v. Katz,* 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (prison official entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").