**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SEAN COLBY HOARD,
*Plaintiff-Appellant*,

v.

J. HARTMAN; BROWN, MR.; ORTEGA,
MR.; E. SALDIVAR; JAMES A.
TAYLOR; MARK NOOTH,
*Defendants-Appellees.*

No. 16-35738

D.C. No.
2:13-cv-02161-
BR

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted May 17, 2018
Portland, Oregon

Filed September 13, 2018

Before:  A. Wallace Tashima, M. Margaret McKeown,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

# SUMMARY[*]

## Prisoner Civil Rights

The panel vacated the district court's summary judgment and judgment entered following a jury trial, and remanded for a new trial, in an action brought by an Oregon state prisoner pursuant to 42 U.S.C. § 1983 alleging excessive force and deprivation of property.

Plaintiff alleged that during a cell search a prison official repeatedly slammed his head against a steel door and a concrete floor. During trial, the district court instructed the jury, in part, that to succeed on his excessive force claim, plaintiff had to prove that the prison official acted maliciously and sadistically for the purpose of causing harm. The district court further instructed the jury that the term "sadistically" in this context meant "having or deriving pleasure from extreme cruelty."

The panel held that a claim for excessive force under the Eighth Amendment does not require proof that an officer enjoyed or otherwise derived pleasure from his or her use of force. The district court therefore plainly erred by instructing the jury that "maliciously and sadistically for the very purpose of causing harm" required having or deriving pleasure from extreme cruelty. The panel held that these erroneous instructions prejudiced plaintiff, and that intervention was necessary to prevent a miscarriage of justice.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel vacated the district court's sua sponte grant of summary judgment to the defendants on plaintiff's deprivation-of-property claim after determining that plaintiff, who was proceeding pro se at the time, failed to receive sufficient notice that the claim was at issue on summary judgment.

## COUNSEL

Joshua Hafenbrack (argued) and Sean A. Lev, Kellogg Hansen Todd Figel & Frederick PLLC, Washington, D.C., for Plaintiff-Appellant.

Peenesh Shah (argued), Assistant Attorney General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Attorney General; Office of the Attorney General, Salem, Oregon; for Defendants-Appellees.

## OPINION

PAEZ, Circuit Judge:

Cruelty distilled is harm inflicted without reason: pain for the sake of pain, violence in the name of violence. For this reason, the Supreme Court has long held that the Eighth Amendment forbids the application of force by officers against an inmate "for the very purpose of causing harm," *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986), without regard to the officers' emotional enjoyment. A correctional officer who slams an unresisting inmate's head into a concrete floor until he bleeds is therefore no less liable for excessive force if he does so dispassionately than if he does so with pleasure.

Notwithstanding these well-established principles, the district court instructed the jury that in order for Sean Hoard to prevail on his excessive force claim under the Eighth Amendment, he had to prove by a preponderance of the evidence that his alleged abuser "ha[d] or deriv[ed] pleasure from extreme cruelty" while beating him. This instruction saddled Hoard with the unnecessary and exceedingly difficult burden of proving that the officer was not just cruel, but sadistic as well. Unsurprisingly, the jury returned a verdict in favor of the officer.

We hold that excessive force under the Eighth Amendment does not require proof that an officer enjoyed or otherwise derived pleasure from his or her use of force. The district court's instructions to the contrary were plainly erroneous. Moreover, these erroneous instructions prejudiced Hoard. Given the circumstances of this case, we conclude that our intervention is necessary to prevent a miscarriage of justice. We therefore vacate the district court's judgment and remand for a new trial. We also vacate the district court's sua sponte grant of summary judgment to the Defendants on Hoard's deprivation-of-property claim for lack of adequate notice.[1]

## I.

## A.

On the morning of December 21, 2012, Hoard requested a razor for personal use. At the time, he was confined to a cell in the Intensive Management Unit ("IMU") at the Snake

---

[1] Defendants are Mark Nooth and James Taylor, Snake River Correctional Institution's superintendent and grievance coordinator, respectively, Officer Hartman, Officer Ortega, Officer Saldivar, and Sergeant Brown.

River Correctional Institution, a prison located in eastern Oregon. The IMU is a maximum custody unit reserved for inmates who have previously exhibited violent behavior or who otherwise present serious management concerns. Inmates confined in the IMU are subject to significant restrictions. They are not permitted to keep their razors in their cells and must request them from the correctional officer on duty. They spend 23 hours a day in their cells and may leave only for showers, recreational activity, and medical attention. Before exiting their cells, IMU inmates must be handcuffed through a cuff port. At least two correctional officers are required to escort IMU inmates to their destination at all times.

Officer Ortega, the correctional officer on duty that morning, granted Hoard's request and issued him a razor pursuant to IMU policies. The parties dispute whether Officer Ortega provided Hoard with a functioning razor. Regardless, it is undisputed that Hoard smashed the razor into pieces out of frustration, flushing the smaller fragments down the toilet and sweeping the larger ones into the trash can. Unable to retrieve the razor during his return trip to Hoard's cell in the afternoon, Officer Ortega enlisted the assistance of Sergeant Brown and Officer Saldivar to conduct a search of Hoard's cell for the missing razor pieces. The parties agree that Hoard initially complied with the search and submitted to the restraints without difficulty. Hoard was cuffed and left outside his cell, during which time he was "compliant," "quiet," and behaving "fine."

From this point on, however, the parties' narratives sharply diverge. Hoard testified at trial that while waiting for the other officers to complete their search, he saw Officer Hartman walk towards him with a threatening grin on his face. This was particularly concerning to Hoard, who

believed that Officer Hartman bore a grudge against him based on their prior interactions.

In this version of events, Hoard's sense of foreboding proved prescient. He testified that while the other officers were preoccupied with searching his cell, Officer Hartman grabbed him by the collar and started to yank and jerk him around, making it difficult for Hoard to breathe. When Hoard asked Officer Hartman to stop, Officer Hartman allegedly responded that this was what Hoard deserved and threatened that "this is going to hurt." Hoard then called out to Officer Saldivar, who came out of the cell to assess the situation. According to Hoard, Officer Saldivar asked Officer Hartman to loosen his grip on Hoard's collar and to stop provoking Hoard. Satisfied that Officer Hartman was following his instructions, Officer Saldivar turned away and headed back towards the cell to resume his search.

Shortly thereafter, Officer Hartman allegedly grabbed Hoard by the back of his head and slammed his face against a steel door. Hoard testified that he lost consciousness and that when he came to a short while later, he felt blood dripping down his face and off his nose. He also realized that his pants and underwear had been pulled down to his ankles, leaving him exposed in front of the officers and other inmates. Hoard testified that although the other three officers were present and watching, none of them offered him any help or explanation for what happened. Hoard curled himself into a fetal position on the ground, but to no avail. Declaring that "this" was what Hoard deserved, Officer Hartman allegedly proceeded to slam Hoard's face into the concrete floor, scraping his bleeding cut across the

drain.[2]  By this point, Sergeant Brown and Officer Ortega had left the unit to retrieve leg restraints for Hoard.  Officer Saldivar remained but did not intervene.  Hoard explained at trial that he tried to remain "limp" throughout the alleged abuse, because he was scared that any movement on his part would exacerbate the situation and result in the use of additional force.

The officers' recollection of the incident presents a different story.  In this version of events, Hoard grew increasingly agitated while waiting for the search to finish and began to "thrash[] his head back and forth" as the other inmates taunted him from inside their cells.  Officer Hartman testified that he ordered Hoard to remain calm and then "placed" Hoard against the cell door.  Officer Saldivar testified that he briefly stepped outside of Hoard's cell to tell Hoard to "relax," but that he returned to the cell after Officer Hartman told him to go back to the search.  After overhearing Hoard demand that Officer Hartman let him go, Officer Saldivar moved to assist Officer Hartman with restraining Hoard.  Officer Saldivar testified that he grabbed and swept Hoard's legs and that the movement pulled Hoard's pants and underwear down, leaving Hoard exposed.  Hoard allegedly then asked the officers, "Is this all you got?"

Officer Hartman testified that together with Officer Saldivar, he "plac[ed]" Hoard on the floor and used only "minimal" force to restrain Hoard.  Officer Hartman also testified that he never saw Hoard's pants pulled down to his ankles and that Hoard never lost consciousness.  The officers eventually put leg irons on Hoard's ankles because he was allegedly kicking his legs and thrashing his head back and

---

[2] Installed to drain water from the cells in the case of a flood, the drain runs the full length of the cells and is covered by a metal grate.

forth while on the ground. Neither Officer Hartman nor
Officer Ortega recalled seeing any injuries on Hoard either
during or after the incident, but a body spill response report
prepared afterwards described "blood on [the] floor" in front
of Hoard's cell. The altercation was not video recorded.

Hoard was moved to intake, where a nurse cleaned the
blood from his face, rinsed his cut, and applied glue and a
butterfly bandage to his laceration. A few days after the
incident, Hoard attempted suicide by overdosing on pills.
He testified that his suicide attempt was fueled in part by the
embarrassment and humiliation he felt at having his pants
and underwear ripped down in front of the other inmates,
some of whom he "considered predators." As for physical
injuries, in addition to the cut on his face—which left a scar
on his head—Hoard suffered continuous pain on the right
side of his face and in particular, his right jaw, for which he
was eventually prescribed painkillers. Hoard was also
prescribed a mouth guard for the pain and placed on a liquid
diet for a short period of time. At Hoard's request, he was
moved from a liquid diet to a soft diet, which lasted under a
month. The injury did not fully heal: three years later, Hoard
testified that he could not fully open his mouth without
popping his jaw and that his jaw would hurt if he talked for
too long.

Following the altercation, Captain Robert Real prepared
an "unusual incident report" based on each of the four
officers' memos.[3] This report, like the officers' memos,
failed to mention the injuries to Hoard's jaw, the officers'

---

[3] Captain Real testified that an unusual incident report documents
"anything . . . unusual to the institution that could be a matter of interest
to the general public at a later point." This includes any use of force
against inmates.

use of leg restraints, or the fact that Hoard had been left exposed from the waist down while on the prison floor. Although Captain Real testified at trial that he thought that the use of force had been appropriate and necessary, a preliminary review of the unusual incident report recommended that the incident be investigated under full review.[4]  The preliminary review expressed concern that the officers' memos "lack[ed] detail" and "[did] not mention the injury to inmate Hoard."   The review also included a handwritten note stating that "[a] camera should have been used to video the event as a planned use of force."  Contrary to the preliminary review's recommendation, however, no full review ever took place because the Inspector General deemed it unnecessary.

## B.

Hoard filed a *pro se* complaint alleging various constitutional and state law violations against the Defendants on December 9, 2013.  The district court granted Hoard's motion to file a first amended complaint, and the Defendants moved for summary judgment.

Because Hoard was unrepresented, the district court—adopting the magistrate judge's report and recommendation—liberally construed Hoard's complaint as raising four types of claims: a section 1983 claim against Snake River Correctional Institution's superintendent, Mark Nooth, and grievance coordinator, James Taylor, for

---

[4] According to Captain Real, conducting a full review requires bringing in an "outside body" staffed with people "outside the institution that would review all the facts, conduct interviews of staff that were involved, review any kind of documentation, videos," and other materials to determine whether the use of force fell within the rules.

violating Hoard's Fourteenth Amendment right to due process; a section 1983 excessive force and deliberate indifference claim under the Eighth Amendment against Nooth, Officers Hartman, Ortega, Saldivar, and Sergeant Brown; supplemental state common law claims against all Defendants; and state constitutional claims against Hartman and Taylor.[5]  The district court granted Defendants' motion for summary judgment as to Nooth and Taylor on all claims. With respect to Taylor, the court concluded that although Hoard alleged in his complaint that he had been deprived of his property from December 21, 2012 to January 10, 2013, his failure to detail exactly what property he was deprived of meant that there was no genuine issue of material fact supporting his allegations that he had been deprived of a constitutionally-protected property interest.  The district court denied Defendants' motion for summary judgment and qualified immunity on the remaining excessive force and deliberate indifference claims.[6]

The district court set the case for trial and appointed pro bono counsel to represent Hoard.  The trial lasted two days. At the conclusion of the evidence, the district court granted judgment as a matter of law for Sergeant Brown and Officer Ortega.  Hoard's excessive force claim against Officer Hartman and his deliberate indifference claim against Officer Saldivar went to the jury.  Pursuant to the parties' jointly proposed jury instructions, the district court instructed the jury that to succeed on his excessive force

---

[5] Hoard successfully filed a second amended complaint, but the complaint was unaccompanied by a declaration attesting to its contents. Accordingly, the district court relied only on Hoard's first amended complaint for its summary judgment order, as do we.

[6] The district court granted summary judgment to the Defendants on Hoard's state common law and state constitutional claims.

claim, Hoard had to prove that Officer Hartman "used excessive and unnecessary force against the plaintiff under all the circumstances," that Officer Hartman had "acted maliciously and sadistically for the purpose of causing harm," and that Officer Hartman's acts harmed Hoard.

Midway through the jury's deliberations, which ultimately lasted eight hours, four of the jurors sent a signed note asking the district court to "provide a definition for maliciously and for sadistically as it pertains to this case." Inexplicably, counsel for Hoard agreed that the court should respond with the "ordinary dictionary meaning of the terms 'malicious' and sadistic.'" The district court therefore responded to the jurors' question with a supplemental instruction explaining that "[t]he term 'maliciously' in the instructions has its ordinary meaning, which is 'having or showing a desire to cause harm to another.' Likewise, the term 'sadistically' has its ordinary meaning, which in this context means 'having or deriving pleasure from extreme cruelty.'"

After receiving the supplemental instruction, the jury returned a verdict finding that Hoard had failed to prove by a preponderance of the evidence that Officer Hartman used excessive force. Because the jury did not find that Officer Hartman used excessive force, Hoard necessarily failed to prove that Officer Saldivar was deliberately indifferent to the use of excessive force.

This, however, did not mark the end of the trial. Following the jury's verdict, the district court asked if any of the jurors had anything they wished to say. In response, one of the jurors expressed to the court his or her discomfort with the "incomplete" nature of the officers' reports and remarked that this concern was shared by all of the jurors. The juror was particularly troubled by the fact that some of

the reports omitted any mention of Hoard's injuries, which made it "difficult" for the juror to believe that the jurors "had all the information."  Another juror expressed "concern[] that the situation was not a good one for anybody" and that there were "things that need[ed] to be addressed in this kind of . . . incarceration situation."

Nonetheless, in accordance with the verdict, the district court entered judgment in favor of the Defendants.  Hoard timely appealed and we appointed pro bono counsel.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review the district court's supplemental jury instructions for plain error because counsel for Hoard failed to object to the district court's proposed definition for "sadistically" at trial.[7] *See C.B. v. City of Sonora*, 769 F.3d 1005, 1016–17 (9th Cir. 2014) (en banc) (holding that plain error review applies in civil cases "when a party fails to preserve an objection"); *see also* Fed. R. Civ. P. 51(d) ("A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights.").

We reject Hoard's argument that we may apply de novo review to the district court's supplemental jury instructions simply because his appeal presents a pure question of law. Although it is true that we have occasionally applied de novo

---

[7] The standard of review is identical for jury instructions and supplemental jury instructions given in response to a jury's questions. *See United States v. Castillo*, 866 F.2d 1071, 1085 (9th Cir. 1988). Defendants do not argue waiver, only forfeiture.  Accordingly, both parties agree that, at a minimum, plain error review applies to the district court's supplemental instruction.

review to unpreserved arguments in criminal cases "where the appeal presents a pure question of law and there is no prejudice to the opposing party," *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 426 (9th Cir. 2011), we have never recognized this exception for *civil* cases. Nor do we see a need to expand this exception beyond the criminal context given that "the stakes are lower in the civil context." *C.B.*, 769 F.3d at 1018.

We review de novo a district court's decision to grant summary judgment. *See Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017).

## III.

We turn first to Hoard's argument that the district court's supplemental jury instructions were plainly erroneous. We may exercise our discretion to correct a district court on plain error review when the following factors are met: (1) the district court erred; (2) the error was obvious or plain; (3) the error affected substantial rights; and (4) the error "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *C.B.*, 769 F.3d at 1018–19 (quoting *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 36 (1st Cir. 2006)). We may also take into consideration "the costs of correcting an error, and—in borderline cases—the effect that a verdict may have on nonparties," although these considerations are by no means dispositive as to whether we will exercise our discretion to correct forfeited errors. *Id.* at 1018.

We conclude that the district court's supplemental instructions to the jury were plainly erroneous. Because this error likely prejudiced the outcome of the case and—left uncorrected—would contribute to a miscarriage of justice, we vacate the district court's judgment and remand for a new

trial on Hoard's excessive force and deliberate indifference claims against Officers Hartman and Saldivar.**[8]**

## A.

There is no doubt that the Constitution does not require proof of sadism, or pleasure from extreme cruelty, for excessive force claims brought under the Eighth Amendment. Accordingly, the district court erred when it included such a requirement in its supplemental instruction to the jury.

The Eighth Amendment has long guarded inmates against the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion); *see also Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) ("Thus, we have held repugnant to the Eighth Amendment punishments which . . . involve the unnecessary and wanton infliction of pain." (internal citations and quotation marks omitted)). For a time, this meant that the sanctions imposed on inmates could not "be so totally without penological justification that [they] result[] in the gratuitous infliction of suffering." *Gregg*, 428 U.S. at 183. The focus of this inquiry was therefore not on officer intent, but on the lack of any penological justification for harming the inmate.

The *Gregg* and *Estelle* standard for "unnecessary and wanton infliction of pain" in excessive force cases was short-lived. In *Whitley v. Albers*, 475 U.S. 312 (1986), the Supreme Court clarified that in some circumstances, "the

---

**[8]** We therefore do not address Hoard's argument that the district court erroneously excluded Officer Ortega's deposition statements on cross-examination.

question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically *for the very purpose of causing harm.*'" *Id.* at 320–21 (emphasis added) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.)). By focusing on the officer's intent at the time he or she acted, *Whitley* ensured that officers would not be held liable under the Eighth Amendment "simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* at 319. As Justice Marshall pointed out in his dissent, the majority opinion in *Whitley* created a "distinct and more onerous burden" for plaintiff prisoners than the original unnecessary and wanton standard, which did not require proof that the officers acted for the purpose of causing harm. *Id.* at 328–30 (Marshall, J., dissenting).

In the decades since *Whitley* was decided, the Supreme Court has consistently emphasized that the "core judicial inquiry" in excessive force cases is "whether force was applied in a good-faith effort to maintain or restore discipline, *or* maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (emphasis added); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (same). The contrast is clear: an officer who harms an inmate as part of a good-faith effort to maintain security has acted constitutionally, but an officer who harms an inmate "for the very purpose of causing harm," *Whitley*, 475 U.S. at 321, has engaged in excessive force, provided that the other elements of excessive force have been met.[9] Put simply,

---

[9] The other two elements of an Eighth Amendment excessive force claim are 1) "the defendant used excessive and unnecessary force under

officer intent—not officer enjoyment—serves as the core dividing factor between constitutional and unconstitutional applications of force. Thus, "[a]n inmate who is *gratuitously* beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38 (emphasis added).

Defendants nonetheless urge us to conclude that the district court did not err in instructing the jury on the meaning of "sadistically" because *Whitley* established that only force applied "maliciously and sadistically to cause harm" constitutes excessive force. In support of their argument, Defendants point to a string of Eighth Circuit decisions explaining that "[t]he word 'sadistically' is not surplusage; '"maliciously" and "sadistically" have different meanings, and the two together establish a higher level of intent than would either alone.'" *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994)); *see also Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir. 1998) (concluding that the district court did not abuse its discretion by defining "sadistically" for the jury).

We decline to follow our sister circuit's interpretation of *Whitley*. As we have cautioned before, "[o]pinions, unlike statutes, are not usually written with the knowledge or expectation that each and every word may be the subject of searching analysis."[10] *United States v. Muckleshoot Indian*

---

all of the circumstances"; and 2) the defendant's acts caused the plaintiff harm. 9th Cir. Civ. Jury Instr. 9.26 (2017).

[10] We also do not find the Seventh Circuit's decision in *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004) persuasive, because the opinion does

*Tribe*, 235 F.3d 429, 433 (9th Cir. 2000). Sometimes, a word is just a word. And there is ample evidence here that the Supreme Court did not intend its use of "maliciously and sadistically" in *Whitley* to work a substantive change in the law on excessive force beyond requiring intent to cause harm. Chief among this evidence is the fact that the Supreme Court has never addressed "maliciously and sadistically" *separately* from the specific intent to cause harm. It has even, on one occasion, omitted any mention of "maliciously and sadistically" altogether and simply explained that "a purpose to cause harm is needed for Eighth Amendment liability in a [prison] riot case." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998). Indeed, as recently as *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), the Supreme Court referred to this factor of the excessive force test as the "malicious and sadistic purpose *to cause harm*." *Id.* at 2476 (emphasis added).

The Court's characterization of this standard in *Kingsley* comports with our understanding that the phrase "maliciously and sadistically" serves a predominantly rhetorical function. Rather than create additional elements for plaintiffs to satisfy, the use of these two terms emphasizes the cruelty inherent in harming an inmate for no other reason than to cause harm. *See also Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 175 n.1 (3d Cir. 2001) (explaining that "[t]he use of the term 'sadistic' in this standard is something of a misnomer," because "[p]recedent does not require that the alleged offender take pleasure or satisfaction from the injury, as the term entails, but rather only that the offender intended harm"). Thus, we concluded in *Robins v. Meecham*, 60 F.3d

not discuss the development of the Supreme Court's Eighth Amendment standard for excessive force.

1436 (9th Cir. 1995), that the defendant officers were not entitled to qualified immunity because the plaintiff had created a triable issue of material fact as to whether the officers had shot at him with the "specific intent to harm." *Id.* at 1440–41.

We have never required proof of sadism or masochism in excessive force cases. As we have explained before, in order to assess whether "the handling of [an inmate] was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing him harm," we will "examine the need for the application of the measure or sanction complained of, the relationship between the need and the measure or sanction used, the extent of any injury inflicted, and the extent of the surrounding threat to the safety of staff and inmates." *LeMaire v. Maass*, 12 F.3d 1444, 1454 (9th Cir. 1993). Consistent with *Whitley* and its progeny, an officer's subjective enjoyment is not a necessary element of an Eighth Amendment excessive force claim. Of course, an officer who harms an inmate for his or her personal enjoyment has engaged in excessive force, but that is not the question before us: the question is whether proof of sadism is *required* for excessive force claims. We hold that it is not. *See id.* at 1461 ("[T]he record establishes conclusively that *none* of the named practices were unnecessary, or imposed on [the plaintiff] maliciously *or* sadistically *or* for the purpose of causing harm." (first emphasis in original)); *see also Jeffers v. Gomez*, 267 F.3d 895, 912 (9th Cir. 2001) (concluding that the officers were entitled to summary judgment because there was an "absence of evidence showing that either officer acted purposely to injure" the plaintiff and the officers' actions did not suggest "malice or sadism or otherwise create an inference of impermissible motive").

By instructing the jury that "maliciously and sadistically for the very purpose of causing harm" required "having or deriving pleasure from extreme cruelty," the district court required Hoard to prove that Officer Hartman acted with a subjective state of mind far more demanding than that of intent to harm.  This was error.

**B.**

Mere error, however, is insufficient on plain error review to support vacatur.  "The second prong of the plain error analysis requires the error to be plain or obvious."  *Draper v. Rosario*, 836 F.3d 1072, 1085 (9th Cir. 2016) (internal quotation marks omitted).  In other words, it must have been "sufficiently clear at the time of trial" that the district court's supplemental instruction was impermissible.  *Id.* at 1086.  We agree with Hoard that the district court's instruction was plainly erroneous.

We have made clear time and time again that the "core judicial inquiry," *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7), in an Eighth Amendment excessive force case is whether the defendant officers acted in bad faith with the intent to harm the inmate.  *See, e.g.*, *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 795 (9th Cir. 2018) ("[T]here was abundant evidence presented to the jury that appellants inflicted severe injuries on appellees while they were not resisting, and even while they were unconscious.  A jury could reasonably . . . determine that this force was not part of a 'good-faith effort to maintain or restore discipline.'" (quoting *Hudson*, 503 U.S. at 7)); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (concluding that "qualified immunity was inappropriately granted" on the plaintiff's Eighth Amendment excessive force claim because the plaintiff had sufficiently alleged facts showing "that a significant amount of force was employed without

significant provocation from [the plaintiff] or warning from the officers"); *Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir. 2003) (concluding that "shoot[ing] a passive, unarmed inmate standing near a fight between other inmates, none of whom was armed, when no inmate was in danger of great bodily harm, would inflict unnecessary and wanton pain" in violation of the Eighth Amendment); *Jeffers*, 267 F.3d at 912 ("The officers' uncertainty does not suggest malice or sadism or otherwise create an inference of impermissible motive."); *Robins*, 60 F.3d at 1440 ("We advance this purpose of the Eighth Amendment [to restrain prison officials] by holding prison officials liable so long as they have a specific intent to harm.").

At no point have we required plaintiffs to prove that their alleged abusers derived pleasure from acts of extreme cruelty in order to prevail on an excessive force claim. The reason for this is simple: sadism is not—and has never been—an element of excessive force. Just as a district court commits plain error "when its jury instructions fail to incorporate an element of the crime that has been clearly established by Ninth Circuit precedent," *United States v. Alferahin*, 433 F.3d 1148, 1157 (9th Cir. 2006), so, too, does it commit plain error when it adds an obviously non-existent element to the plaintiff's burden of proof.

## C.

The third prong of the plain error analysis requires that the district court's plain error have prejudiced the complaining party or otherwise affected his or her substantial rights. *See Draper*, 836 F.3d at 1085; *see also United States v. Olano*, 507 U.S. 725, 734 (1993) ("The third and final limitation on appellate authority . . . is that the plain error affect substantial rights. . . . [I]n most cases it means that the error must have been prejudicial: It must have

affected the outcome of the district court proceedings." (internal alteration and quotation marks omitted)); *C.B.*, 769 F.3d at 1018 ("[W]e must consider, as we do in the criminal context, whether . . . (3) the error affected substantial rights." (citing *Olano*, 507 U.S. at 732)). We conclude that Hoard has satisfied this factor as well.

As a general matter, "[w]hen the trial court erroneously adds an extra element to the plaintiff's burden of proof, it is unlikely that the error will be harmless." *Sanders v. City of Newport*, 657 F.3d 772, 781 (9th Cir. 2011) (internal alterations and quotation marks omitted) (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009)). We have therefore concluded that a district court's erroneous instruction adding an unnecessary element to a plaintiff's burden of proof is not harmless when "it is impossible to determine from the jury's verdict and evidentiary record that the jury would have reached the same result had it been properly instructed." *Id.* at 782–83.

Here, not only is it impossible to determine that the jury would have reached the same result, there are signs that the jury might very well have returned a different verdict had they received the correct instructions on excessive force. Four of the jurors paused halfway through an eight-hour deliberation to request instructions specifically on the meaning of "maliciously and sadistically" acting to cause harm. Rather than instruct the jury that these terms possessed no unique meaning outside of the specific intent to cause harm, the district court informed the jury that they had to find Officer Hartman derived pleasure from extreme cruelty. Following another four hours of deliberation, the jury returned a verdict in favor of Officers Hartman and Saldivar, but not without considerable difficulty. Post-verdict, one of the jurors expressed to the court his or her

concern that the reports prepared by the officers were "incomplete" and that the jury therefore did not possess "all of the information" before returning a verdict. It is entirely possible that one of the information gaps that so troubled this juror (and potentially others) included the lack of evidence as to whether Officer Hartman derived pleasure from harming Hoard.

Because the district court's instruction went to the heart of Hoard's excessive force claim and improperly added to his burden of proof, we conclude that Hoard was prejudiced by the district court's erroneous instructions.

## D.

Rare is the case where the district court's errors are so grave as to "seriously impair[] the fairness, integrity, or public reputation of judicial proceedings." *C.B.*, 769 F.3d at 1019 (quoting *Diaz-Fonseca*, 451 F.3d at 36); *see also Teixeira v. Town of Coventry ex rel. Przybyla*, 882 F.3d 13, 18 (1st Cir. 2018) (observing that reversals on plain error review of jury instructions are "hen's-teeth rare"). This last prong of the plain error analysis is undoubtedly the hardest to meet, but we conclude that it has been met.

Officers Hartman and Saldivar received every benefit available to state officials in excessive force cases: the opportunity to claim qualified immunity, a difficult excessive force standard, and an instruction requiring the jury to give deference to correctional officials in matters of prison administration. *See Hudson*, 503 U.S. at 16 (Blackmun, J., concurring) ("Moreover, prison officials are entitled to a determination before trial whether they acted in an objectively reasonable manner, thereby entitling them to a qualified immunity defense."); *Whitley*, 475 U.S. at 329 (Marshall, J., dissenting) ("The Court imposes its heightened

version of the 'unnecessary and wanton' standard only when the injury occurred in the course of a 'disturbance' that 'poses significant risks.'" (internal citation omitted)); *Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2010) ("We have long recognized that additional instruction regarding deference is required in cases applying *Whitley* to allegedly excessive force by prison officials."). To this, the district court added the benefit of its unnecessary and improper instruction on sadism. This instruction placed a heavy thumb on the scale in favor of the Defendants by demanding more from Hoard than the Eighth Amendment requires.

Such a high burden of proof deprived Hoard of a meaningful and fair opportunity to seek redress for alleged violations of his constitutional right to be free from cruel and unusual punishment. This was a grave injustice. At its core, the Eighth Amendment reflects this country's "fundamental respect for humanity." *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). That respect is lost when courts close the doors to relief by asking plaintiffs to prove that they were the victims of not just cruelty, but sadism as well.

We therefore exercise our discretion on plain error review to vacate the district court's judgment and remand for a new trial on Hoard's claims against Officers Hartman and Saldivar.[11]

---

[11] The gravity of the district court's error here outweighs the high cost of remanding for a new trial, which ordinarily would counsel in favor of withholding vacatur. *See C.B.*, 769 F.3d at 1018 ("[W]hen reviewing civil jury instructions for plain error, we find it appropriate to consider the costs of correcting an error . . . ."). We do not consider this a borderline case. We therefore do not consider "the effect that a verdict may have on nonparties." *Id.*

## IV.

Hoard also argues that the district court erred when it adopted the magistrate judge's recommendation and sua sponte granted summary judgment on Hoard's deprivation-of-property due process claim. We agree.

Federal Rule of Civil Procedure 56(f) provides that a district court may sua sponte grant summary judgment for a nonmovant on grounds not raised by a party as long as the court has given the adversely impacted party "notice and a reasonable time to respond." Hoard, however, received no such notice from either the court or the Defendants. When Defendants moved for summary judgment, they addressed Hoard's Fourteenth Amendment claim only as it pertained to the prison's grievance procedures. There was no mention of Hoard's deprivation-of-property due process claim.**[12]**

We reject the Defendants' argument that their blanket request for "complete summary judgment on all claims," including Hoard's "due process claims," was sufficient to give Hoard notice that his property claim was at risk. Because pro se plaintiffs—especially pro se prisoner plaintiffs—"cannot be expected to anticipate and prospectively oppose arguments that an opposing defendant does not make," *Greene v. Solano Cty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008), boilerplate language requesting summary judgment on all claims does not provide sufficient

---

**[12]** Hoard's pro se complaint alleged that he was told he wouldn't "get his property" because of "his actions on 12-21-12," which is when the alleged excessive force took place. As the district court correctly recognized, this was sufficient to allege a Fourteenth Amendment claim based on deprivation of property. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) ("We construe the complaint liberally because it was drafted by a pro se plaintiff.").

notice that an unmentioned claim is at issue on summary judgment.

Accordingly, we vacate the district court's grant of summary judgment on Hoard's deprivation-of-property claim and remand for proceedings consistent with this opinion.

## V.

For the foregoing reasons, we vacate the district court's judgment and remand for a new trial on Hoard's 42 U.S.C. § 1983 excessive force and deliberate indifference claims against Officers Hartman and Saldivar. We also vacate the district court's grant of summary judgment on Hoard's deprivation-of-property claim against Taylor.

Plaintiff-Appellant Hoard shall recover costs on appeal.

**VACATED AND REMANDED.**