FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEWAYNE BEARCHILD, *Plaintiff-Appellant*, <br><br> v. <br><br> KRISTY COBBAN; PASHA, Sgt.; SAM JOVANOVICH; TOM BLAZ; DAN JOHNSON; SHASHLINGE, C/O; BRUNO, C/O; MACDONALD, Sgt.; DENISE DEYOTT, *Defendants-Appellees*. | No. 17-35616 <br><br> D.C. No. 6:14-cv-00012-DLC <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief District Judge, Presiding

Argued and Submitted April 12, 2019
Seattle, Washington

Filed January 16, 2020

Before: William A. Fletcher, Consuelo M. Callahan,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen;
Partial Concurrence and Partial Dissent by Judge Callahan

# SUMMARY[*]

## Prisoner Civil Rights

The panel affirmed in part and reversed in part the district court's judgment in favor of defendant prison officials, entered following a jury trial, in an action brought pursuant to 42 U.S.C. § 1983 by an inmate at the Montana State Prison who alleged that his Eighth Amendment rights were violated when he was sexually assaulted during the course of a pat-down search.

Plaintiff alleged two trial errors: (1) the failure to grant a continuance to allow him to subpoena a key witness; and (2) jury instructions that inaccurately explained the substantive elements of his Eighth Amendment claim.

The panel first held that the district court did not abuse its discretion by failing to continue plaintiff's trial *sua sponte* to allow plaintiff to subpoena a potential witness. The panel concluded that because the record showed that plaintiff's right to present his case was not substantially affected by the lack of a continuance, the district court's decision was not arbitrary or unreasonable.

With respect to the challenged jury instructions, the panel recognized that there was no model jury instruction for Eighth Amendment sexual assault, and the panel took the opportunity to address this Circuit's law governing this type of claim. The panel held that a prisoner presents a viable

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Eighth Amendment sexual assault claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner. The panel held that this definition recognized that there are occasions when legitimate penological objectives within a prison setting require invasive searches. It also accounts for the significant deference courts owe to prison staff, who work in challenging institutional settings with unique security concerns.

The panel held that jury instruction No. 12, which set out the substantive law of plaintiff's Eighth Amendment claim, and which relied almost verbatim on Ninth Circuit Model Civil Jury Instruction 9.26, misstated the elements necessary to establish liability for an Eighth Amendment violation arising from sexual assault. The panel further held that it was impossible to determine whether the jury would have reached the same result had it been properly instructed. The panel therefore reversed the district court's judgment and remanded for a new trial with appropriate jury instructions on the substantive law applicable to plaintiff's claim. Because the panel remanded for a new trial, it also analyzed Instruction No. 10, based on Ninth Circuit Model Civil Jury Instruction 9.2, and concluded that the instruction did not inaccurately state the law with respect to plaintiff's burden of persuasion on causation.

Concurring in part and dissenting in part, Judge Callahan agreed with the majority's conclusion that the district court's decision not to continue the trial *sua sponte* was within its broad discretion and was not arbitrary or unreasonable.

However, Judge Callahan stated that the district court's use of the Ninth Circuit's model jury instruction for Eighth Amendment excessive force claims, if error, was not plain error warranting a new trial, particularly in light of the district court's additional instruction defining "sexual abuse" in a manner well-tailored to the facts of the case.

## COUNSEL

Kathryn Cherry (argued), Gibson Dunn & Crutcher LLP, Dallas, Texas; Theodore J. Boutrous Jr., Gibson Dunn & Crutcher LLP, Los Angeles, California; Caitlin J. Halligan and Andrew C. Bernstein, Gibson Dunn & Crutcher LLP, New York, New York; for Plaintiff-Appellant.

Kirsten K. Madsen (argued), Assistant Attorney General, Agency Legal Services Bureau, Montana Department of Justice, Helena, Montana, for Defendants-Appellees.

## OPINION

CHRISTEN, Circuit Judge:

Dewayne Bearchild, an inmate at the Montana State Prison (MSP), sued several prison staff members pursuant to 42 U.S.C. § 1983, alleging that his Eighth Amendment rights were violated when he was sexually assaulted during the course of a pat-down search. The district court dismissed all defendants except Sergeant Larry Pasha, the prison guard Bearchild accuses of converting the pat-down into a sexual assault. After the trial court denied Pasha summary judgment on his qualified immunity defense, Bearchild tried his case to

a six-member jury, *pro se*. The jury returned a verdict in Pasha's favor. With the assistance of pro bono counsel, Bearchild appeals two claimed trial errors: (1) the failure to grant a continuance to allow him to subpoena a key witness; and (2) jury instructions that inaccurately explained the substantive elements of his Eighth Amendment claim.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We first conclude that the district court did not abuse its discretion by failing to continue Bearchild's trial *sua sponte*. With respect to the challenged jury instructions, we recognize that there is no model jury instruction for Eighth Amendment sexual assault, and we take this opportunity to address our circuit's law governing this type of claim. The model instructions plainly misstate the law applicable to Bearchild's case. Because it is impossible to determine whether the jury would have reached the same result had it been properly instructed, we reverse the district court's judgment and remand for a new trial.

## I.

On the morning of November 4, 2013, Bearchild and several other MSP inmates walked from their housing unit to a general equivalency degree (GED) class located in a different part of the prison. Along the way, guards stopped Bearchild and a fellow inmate to conduct pat-down searches of both men. Bearchild alleges that Pasha's pat-down lasted about five minutes and involved rubbing, stroking, squeezing, and groping in intimate areas. Bearchild claims that Pasha then ordered him to pull his waistband away from his body, stared at his penis, and asked, "Is that all of you?" According to Bearchild, Pasha and the other guards who observed the search began laughing. James Ball, another MSP inmate who

was present, testified at trial and provided an account that was generally consistent with Bearchild's version of events. Ball also testified that, after watching the first part of Pasha's search, he told guards "that's not right," and was then "told to shut up." Bearchild testified that Pasha started the pat-down from behind him but then moved in front of him. On cross-examination, Ball testified that the pat-down began with Pasha behind Bearchild. He was not asked whether Pasha ever walked around to the front of Bearchild's body.

Pasha vigorously disputed Bearchild's characterization of the search and denied that it lasted five minutes and that it transgressed the boundaries of a permissible pat-down. At trial, Pasha presented witnesses who explained that maintaining institutional security requires invasive procedures, particularly because inmates often hide contraband in intimate areas knowing that officers may be reluctant to look in those places. As part of his testimony, Pasha demonstrated the scope of the search he claimed to have conducted using another prison employee as a stand-in for Bearchild.

It is undisputed that Sara Simmons, the inmates' GED teacher, observed the first part of the search, but she did not testify at trial. Simmons gave two written statements: one to investigators, and one directly to Bearchild to use in his administrative grievance. In each, she explained that her view was limited, that she observed Pasha ask Bearchild to pull his pants away from his waist, and that eventually she left the scene until the search was completed. Both of Simmons's statements noted that Bearchild seemed upset when she rejoined him immediately following his encounter with Pasha and that he told Simmons the search was "not right." Bearchild asserts that Simmons asked Pasha if he was

"for real" during the search, but neither of Simmons's statements reflect that she said anything to any of the guards. Bearchild listed one of Simmons's statements as a "will-offer" exhibit for trial, but he never attempted to introduce either statement into evidence.

## II.

We limit our review of the procedural history to the relevant events at trial, which began on July 11, 2017. The district court began by asking Bearchild whether he intended to present any witnesses because it appeared he had not requested any subpoenas. Bearchild, apparently surprised, responded that he had requested subpoenas for several witnesses more than two months earlier, and he showed the court a copy of a subpoena request he prepared that was dated May 3, 2017. During the ensuing colloquy, the State produced prison mailroom records that did not reflect any outgoing legal mail from Bearchild on any date on or around May 3. Bearchild explained that he consistently had difficulty using the prison mail system and that his legal mail often failed to reach its intended destination. Adding to the confusion, a bag of legal mail had been stolen from a local post office in June 2017.[1]

---

[1] After the theft was discovered, the district court sent the parties a list of the documents in the court's file as of June 20, 2017. The court ordered Bearchild to re-file any documents that did not appear on the list. The list did not show any subpoena requests. Bearchild hand-filed a written response on July 11, 2017, at the final pre-trial conference held on the morning of the first day of trial. He informed the court that he received the court's notification on July 5, 2017, more than two weeks after the district court issued it. Bearchild's July 11 filing asserted a generalized complaint with respect to his ability to send and receive legal documents from MSP, but it did not contend that any documents were missing from

The district court recognized that Bearchild was *pro se*, and expressed frustration that the failure to subpoena witnesses left no good alternatives for getting the trial started on time. The court weighed the fact that "[w]e're here, ready for trial" against the fact that "Mr. Bearchild doesn't have any witnesses," and observed that "everybody would like" to "proceed with trial[.]" Ultimately, the court docketed Bearchild's subpoena request, and required that the State make two inmate witnesses available to testify by video. The court denied Bearchild's request to issue a subpoena for Sara Simmons, explaining that Bearchild had not provided an address where she could be served and that he had not paid the statutory witness fee. Bearchild did not object to this ruling or ask for a continuance of the trial to subpoena Simmons. He only objected to the district court's decision to exclude a third inmate's written statement as hearsay. The exclusion of the third prisoner's testimony is not challenged on appeal.

The trial lasted two days. The district court held a conference to discuss proposed jury instructions on the second day, before Pasha rested his defense case. Four instructions are relevant to this appeal: Instructions 10, 11, 12, and 13.

Instruction No. 10 explained § 1983's causation requirement in broad strokes, drawing on Ninth Circuit Model Civil Jury Instruction 9.2.[2] Instruction No. 11

---

the district court's file and it expressed Bearchild's desire to proceed with trial.

[2] Ninth Circuit Jury Instructions Comm., Manual of Model Civil Jury Instructions, at 122 (2017).

explained the general elements of a § 1983 cause of action, directing the jury that Bearchild had the burden of proving Pasha "acted under color of state law" and that his actions "deprived the plaintiff of his particular rights under the United States Constitution as explained in later instructions." This instruction also explained that the parties had stipulated that Pasha acted under color of law and directed the jury that its verdict should be for Bearchild if it found the elements in Instructions 11 and 12 satisfied.

Instruction No. 12 was a more detailed statement of the substantive law pertaining to an Eighth Amendment excessive force claim, relying almost verbatim on Ninth Circuit Model Civil Jury Instruction 9.26.[3] It provided, in relevant part:

> Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments." In order to prove the defendant deprived the plaintiff of this Eighth Amendment right, the plaintiff must prove the following elements by a preponderance of the evidence:
>
> 1. the defendant used excessive and unnecessary force under all of the circumstances;
>
> 2. the defendant acted maliciously and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline; and

---

[3] Manual of Model Civil Jury Instructions, at 192.

3.  the act of the defendant caused harm to the plaintiff.

Instruction No. 12 went on:

In determining whether these three elements have been met in this case, consider the following factors:

1)  the extent of the injury suffered;

2)  the need to use force;

3)  the relationship between the need to use force and the amount of force used;

4)  any threat reasonably perceived by the defendant; and

5)  any efforts made to temper the severity of a forceful response, such as, if feasible, providing a prior warning or giving an order to comply[.]

In considering these factors, you should give deference to prison officials in the adoption and execution of policies and practices that in their judgment are needed to preserve discipline and to maintain internal security in a prison.

Finally, Instruction No. 13 provided one of several definitions of sexual abuse taken from the Prison Rape Elimination Act's (PREA) implementing regulations. *See* 28 C.F.R. § 115.6.[4] Pasha requested Instruction No. 13 to provide context for several PREA investigation reports detailing similar allegations against Pasha lodged by other MSP inmates. Bearchild proffered these reports as exhibits and the district court admitted eight of them, under seal and over Pasha's repeated objections, because it concluded they were public records and not precluded by Fed. R. Evid. 404(b). Instruction No. 13 identified conduct that constitutes "sexual abuse" for purposes of the Prison Rape Elimination Act: "intentional contact, either directly or through the clothing of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks that is unrelated to official duties or where the staff member has the intent to abuse, arouse, or gratify sexual desire."

Bearchild did not object to any of these instructions, either at the time of the conference or when the district court read the instructions to the jury. But the district court expressed some concern with Pasha's proposed version of

---

[4] Congress enacted the PREA in 2003 by unanimous consent to "establish a zero-tolerance standard for the incidence of prison rape in the United States" and to "make the prevention of prison rape a top priority in each prison system[.]" 34 U.S.C. § 30302(1)–(2). The Act directed the Attorney General to "publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape." *Id.* § 30307(a)(1). The rule established standards for investigating and responding to allegations of sexual abuse committed against prison inmates. 28 C.F.R. §§ 115.61–68, 115.71–73. When an investigation substantiates allegations of sexual abuse committed by prison staff, the presumptive disciplinary measure is termination; for sexual abuse committed by inmates, the rule provides for disciplinary sanctions. 28 C.F.R. §§ 115.76, 115.78.

Instruction No. 10, remarking that the proposed causation language was "a little bit confusing." Pasha asserted that the instruction was appropriate because causation is a required element in any § 1983 claim, but he accepted a minor clarification suggested by the district court. There were no other substantive discussions of any of the four pertinent instructions before the district court charged the jury.

As explained, the jury returned a defense verdict and Bearchild appeals two discrete issues. He asserts that the district court should have ordered a continuance of the trial *sua sponte* to allow time for him to subpoena Simmons. He also argues that Instructions 10 and 12 were legally erroneous and that he was prejudiced by their misstatements of law. Bearchild asks that we order a new trial. We address each of his arguments in turn.

## III.

We first consider whether the district court abused its discretion by failing to order a continuance *sua sponte*. Bearchild listed eight witnesses and fifteen adverse witnesses in the subpoena request he provided to the district court on the first day of trial. Of the requested eight non-adverse witnesses, seven were fellow inmates, two of whom witnessed the pat-down. Sara Simmons, Bearchild's GED teacher who was also present during part of the search and provided two written statements in the aftermath, was the eighth non-adverse witness. Bearchild contends on appeal that Simmons was his key witness because she was the only non-prisoner and non-guard who observed Pasha's search. He argues that the importance of her testimony was underscored when the jury asked about her absence from trial

during deliberations.[5]  Given Simmons's vital role in his case and his own status as an incarcerated *pro se* litigant, Bearchild argues that the district court abused its discretion by not granting him time to cure his noncompliance with statutory service and witness fee requirements.  Pasha counters that, at trial, Bearchild downplayed Simmons's importance and stressed the importance of Ball's eyewitness testimony, which was presented by video.  Pasha also points out that Bearchild could have introduced Simmons's written statement because it was disclosed on his exhibit list, and Pasha did not object to it.[6]

A district court's decision to grant or deny a continuance is reviewed for a "clear abuse of . . . discretion."  *United States v. Kloehn*, 620 F.3d 1122, 1126–27 (9th Cir. 2010) (quoting *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985)).  We ask whether, in view of all the surrounding circumstances, a district court's decision not to grant a requested continuance was "arbitrary or unreasonable."  *Id.* at 1127 (quoting *Flynt*, 756 F.2d at 1358).

To answer this question, we apply four factors first outlined in *Flynt*, including the movant's diligence in preparing for trial, whether a continuance would have achieved the movant's purpose, the inconvenience of a

---

[5] The jury's written question asked:  "Why was the statement of the GED teacher not presented in evidence?  And/or why did [she] not testify?"

[6] District of Montana Local Rule 16.4(e) requires parties to prepare exhibit lists that include objections raised by an opposing party.  The district court's final pretrial order reminded all of the parties in Bearchild's case that "objections to exhibits are waived if they are not disclosed on the opposing party's exhibit list."

continuance to the court and non-moving party, and any resulting prejudice the movant may have suffered as a result of the denial. *See* 756 F.2d at 1359. Although we may assign varying weight to the first three of these factors depending on the circumstances, the last factor—prejudice resulting from the denial—is required before error will be assigned to the failure to grant a continuance. *See Kloehn*, 620 F.3d at 1127 (citing *Armant v. Marquez*, 772 F.2d 552, 556 (9th Cir. 1985)). We apply this same general framework even where the party challenging the denial of a continuance on appeal failed to request one in the district court. *See United States v. Orlando*, 553 F.3d 1235, 1237 (9th Cir. 2009) ("A district court's grant or denial of a continuance is reviewed for abuse of discretion even where, as here, no motion for continuance was made." (citing *United States v. Moreland*, 509 F.3d 1201, 1211 (9th Cir. 2007))).

"[T]he focus of our prejudice inquiry is the 'extent to which the aggrieved party's right to present his [case] has been affected'" by the failure to continue the trial *sua sponte*. *Kloehn*, 620 F.3d at 1128 (quoting *United States v. Mejia*, 69 F.3d 309, 318 n.11 (9th Cir. 1995)). Because the record shows that Bearchild's right to present his case was not substantially affected by the lack of a continuance, we conclude that the district court's decision was not arbitrary or unreasonable. To the contrary, the district court conscientiously resolved a challenging situation and acted to ensure that Bearchild, a *pro se* litigant, had a fair and reasonable opportunity to present his case to the jury.

Several facts inform our determination that Bearchild's right to present his case was adequately preserved. First, the district court ordered MSP to produce two of Bearchild's inmate witnesses via video on the first day of trial, which was

the same day the district court received Bearchild's subpoena requests. Second, the district court inquired as to whether Pasha intended to call any of the guards on Bearchild's witness list, thereby enabling Bearchild to question them on cross-examination. Third, Simmons, the only eyewitness the court declined to subpoena, provided two written statements to which Pasha did not object. Perhaps most important, Bearchild expressed his desire to go forward with the trial on the scheduled date, despite voicing concerns that he was missing legal documents from his cell that he claimed were removed during a temporary transfer to another facility before trial, and despite the district court's ruling that it would not subpoena Simmons. Because Bearchild has not demonstrated sufficient prejudice, the district court did not abuse its discretion by failing to continue trial *sua sponte*. *Kloehn*, 620 F.3d at 1127.

## IV.

We next turn to Bearchild's challenge to Instruction No. 12, which set out the substantive law of his Eighth Amendment claim. Bearchild did not object to this instruction, so we review it for plain error. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1016 (9th Cir. 2014) (en banc). The plain error standard requires the party challenging an instruction to show that: (1) there was error; (2) the error was plain; (3) the error affected that party's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See id.* at 1017–19. An instructional error is plain if it was "'sufficiently clear at the time of trial' that the district court's . . . instruction was impermissible." *Hoard v. Hartman*, 904 F.3d 780, 790 (9th Cir. 2018) (quoting *Draper v. Rosario*, 836 F.3d 1072, 1086 (9th Cir. 2016)). A jury instruction that "adds an obviously

non-existent element to the plaintiff's burden of proof" is plainly erroneous under our circuit law. *Id.*  We will usually find sufficient prejudice to warrant reversal where "it is impossible to determine from the jury's verdict and evidentiary record that the jury would have reached the same result had it been properly instructed." *Id.* at 791 (quoting *Sanders v. City of Newport*, 657 F.3d 772, 782–83 (9th Cir. 2011)).

We consider the entire set of instructions as a whole to determine whether an individual instruction was misleading or incorrectly stated the law. *See Maddox v. City of L.A.*, 792 F.2d 1408, 1412 (9th Cir. 1986).  Here, Instruction No. 12 must be read in conjunction with Instruction No. 11, because Instruction No. 11 provided the jury with the basic principles of a § 1983 cause of action and it explicitly cross-referenced Instruction No. 12.  We also consider Instruction No. 12 in light of Instruction No. 13's "sexual abuse" standard, which was drawn from the PREA's implementing regulations.

## A.

Prisoner Eighth Amendment challenges generally fall into three broad categories.  One type of claim arises when staff exhibit "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A closely related type of case addresses prisoners' challenges to their conditions of confinement.  *See Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002).  A third type of claim asserts that prison staff used excessive force against an inmate. *See Hudson v. McMillian*, 503 U.S. 1, 5–6 (1992).  Here, our inquiry focuses on the last category because Bearchild pleaded a sexual assault claim and we have consistently placed prisoner sexual assault claims within the same legal

framework as excessive force claims. *See Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012); *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

In *Hudson v. McMillian*, the Supreme Court considered whether an inmate's allegation that corrections officers beat him during his transfer to administrative segregation stated a viable Eighth Amendment claim because the inmate did not "suffer serious injury." 503 U.S. at 4. The Court divided its inquiry into two components: (1) a "subjective" inquiry into whether prison staff acted "with a sufficiently culpable state of mind"; and (2) an "objective component" that asked whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. at 8 (internal quotation marks omitted).

With respect to the subjective component, the Court reiterated earlier precedent establishing that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment[,]" *id.* at 5 (omission in original) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)), but the Court cautioned that "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Id.* at 6. The Court observed that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (quoting *Whitley*, 475 U.S. at 320). The Court held that the subjective inquiry for excessive force claims "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (internal quotation marks omitted) (quoting *Whitley*, 475 U.S. at 320–21). When

weighing the merits of excessive force claims, we have interpreted *Hudson* to stand for the proposition that prison staff should be "accorded wide-ranging deference[.]" *Wood*, 692 F.3d at 1050 (quoting *Hudson*, 503 U.S. at 6).

*Hudson* also explained that the objective component of an Eighth Amendment excessive force claim is "contextual and responsive to 'contemporary standards of decency.'" 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). The Court distinguished between cases that involve allegations of insufficient medical care, where a prisoner's medical needs must be objectively "serious," with excessive force cases and held that, "[i]n the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Id.* at 9 (internal citation omitted). In view of the contextual nature of this inquiry, the Court declined to establish a categorical standard for the showing of objective harm required to prove an Eighth Amendment excessive force claim. Instead, it set goalposts—expressly rejecting the notion that "serious injury" is required but noting that *de minimis* force is not actionable so long as it is not "of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9–10 (quoting *Whitley*, 475 U.S. at 327). Following the Supreme Court's guidance, we have consistently held that a prisoner asserting an Eighth Amendment claim "must objectively show that he was deprived of something 'sufficiently serious.'" *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (quoting *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009)). That objective standard remains constant, but what constitutes a sufficiently serious deprivation may evolve as "the basic mores of society change." *Kennedy v. Louisiana*, 554 U.S.

407, 419 (2008) (quoting *Furman v. Georgia*, 408 U.S. 238, 382 (1972) (Burger, C.J., dissenting)). As the Supreme Court explained in *Hudson*, "the Eighth Amendment's prohibition of cruel and unusual punishments 'draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society,' and so admits of few absolute limitations." 503 U.S. at 8 (alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

Five factors bear on the excessive force analysis in a typical Eighth Amendment claim: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (quoting *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003)). Instruction No. 12 closely paralleled the Ninth Circuit's model instructions for Eighth Amendment excessive force claims. For the reader's convenience, we restate Instruction No. 12 here:

> Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments." In order to prove the defendant deprived the plaintiff of this Eighth Amendment right, the plaintiff must prove the following elements by a preponderance of the evidence:
>
> 1. the defendant used excessive and unnecessary force under all of the circumstances;

    2.  the defendant acted maliciously and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline; and

    3.  the act of the defendant caused harm to the plaintiff.

The instruction went on to say that:

    In determining whether these three elements have been met in this case, consider the following factors:

    1)  the extent of the injury suffered;

    2)  the need to use force;

    3)  the relationship between the need to use force and the amount of force used;

    4)  any threat reasonably perceived by the defendant; and

    5)  any efforts made to temper the severity of a forceful response, such as, if feasible, providing a prior warning or giving an order to comply[.]

    In considering these factors, you should give deference to prison officials in the adoption and execution of policies and

> practices that in their judgment are needed to preserve discipline and to maintain internal security in a prison.

The "[u]se of a model jury instruction does not preclude a finding of error." *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005) (alteration in original) (quoting *United States v. Warren*, 984 F.2d 325, 328 (9th Cir. 1993)). Further, as the Supreme Court has emphasized, courts considering Eighth Amendment claims must give "due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Whitley*, 475 U.S. at 320.

Bearchild does not allege that Pasha used more physical force than necessary to quell a riot or prevent a dangerous situation from escalating; he asserts that Pasha abused his position of authority by converting a routine pat-down search into a humiliating and abusive sexual assault. *Cf. id.* at 315–16 (considering Eighth Amendment challenge to use of deadly force in context of riot and hostage situation). We agree with Bearchild that Instruction No. 12 misstated our circuit's law with respect to an Eighth Amendment claim premised on a sexual assault theory. Two of our prior decisions make this plain.

First, in *Schwenk v. Hartford*, we considered a § 1983 claim brought by a transsexual woman prisoner against a male prison guard. 204 F.3d at 1193. Schwenk was initially held in a medium-security section of the all-male Washington State Penitentiary. *Id.* Schwenk alleged that the defendant-guard, Mitchell, engaged in an escalating pattern of sexual harassment that began with "winking, performing explicit actions imitating oral sex, making obscene and threatening comments, watching [Schwenk] in the shower while

'grinding' his hand on his crotch area, and repeatedly demanding that [Schwenk] engage in sexual acts with him." *Id.* Schwenk further alleged that Mitchell later propositioned her for sex in exchange for "girl stuff" and then forcibly grabbed her buttocks when she declined. *Id.* Schwenk tried to avoid Mitchell after that encounter, but Mitchell subsequently entered her cell, exposed himself, demanded oral sex, and then pinned Schwenk against the bars of her cell and "began grinding his exposed penis into her buttocks" when she refused to comply. *Id.* at 1193–94. Schwenk asserted that Mitchell retaliated after she rebuffed him by orchestrating her transfer to a more restrictive housing unit where she was at greater risk for sexual assault by other inmates. *Id.* at 1194.

In her § 1983 complaint, Schwenk argued that this pattern of harassment and violence constituted a deprivation of her Eighth Amendment rights. *Id.* Mitchell sought qualified immunity, primarily arguing that his conduct did not rise to the level of a constitutional violation, even if the disputed facts were assumed in Schwenk's favor. *Id.* at 1195. The district court denied summary judgment and Mitchell filed an interlocutory appeal. *Id.* We began our analysis by reviewing the Supreme Court's decision in *Hudson*, including the Court's clear direction that "when prison officials maliciously and sadistically use force to cause harm contemporary standards of decency are *always* violated." *Id.* at 1196 (quoting *Hudson*, 503 U.S. at 9). Taking our cue from *Hudson*, we ruled that "no lasting physical injury is necessary to state a cause of action" for an Eighth Amendment violation arising from sexual assault, *Schwenk*, 204 F.3d at 1196, because "[a] sexual assault on an inmate by a guard—regardless of the gender of the guard or of the prisoner—is deeply offensive to human dignity." *Id.* at 1197

(internal quotation marks omitted). *Schwenk* affirmed the district court's order denying Mitchell qualified immunity, holding "the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of this alleged assault, and no reasonable prison guard could possibly have believed otherwise." *Id.*

*Wood v. Beauclair* followed *Schwenk*. 692 F.3d at 1043. In *Wood*, a male prisoner brought a § 1983 claim against a female prison guard. *Id.* Wood alleged that the guard had a reputation for being "overly friendly with the inmates" and that she pursued a relationship with him. *Id.* at 1044. Despite his efforts to resist her advances, Wood alleged that a romantic—but not sexual—relationship began, where the two would talk "often about personal topics" and "[o]ccasionally, they would hug, kiss, and touch each other on the arms and legs." *Id.* When Wood learned that the guard was possibly married, he sought to end their relationship but the guard refused. *Id.* Wood alleged that the guard subjected him to "aggressive pat searches in front of other inmates on a number of occasions," and, in at least two separate incidents, entered Wood's cell and forcibly grabbed his penis. *Id.* at 1044–45.

Wood filed a § 1983 action asserting "sexual harassment by [the guard] in violation of the Eighth Amendment," but the district court granted partial summary judgment, dismissing the Eighth Amendment harassment claims. *Id.* at 1045. The court concluded that Wood had impliedly consented to the sexual acts through his willing participation in the romantic relationship and that, consequently, no sexual assault occurred. *Id.* at 1046.

Our opinion in *Wood* began with the premise that "[s]exual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Id.* at 1046. We went on to explain that "sexual contact between a prisoner and a prison guard serves no legitimate role and 'is simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 1050 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Because there is no "legitimate penological purpose" served by a sexual assault, the subjective component of "malicious and sadistic intent" is presumed if an inmate can demonstrate that a sexual assault occurred. *See id.* at 1050–51 (citing *Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976)); *see also McCleskey v. Kemp*, 481 U.S. 279, 301 (1987) ("[A]ny punishment might be unconstitutionally severe if inflicted without penological justification . . . ."). We also surveyed a range of cases from other circuits, each of which held that sexual assault can be cognizable as an Eighth Amendment violation. *See Wood*, 692 F.3d at 1050.[7]

*Wood* also contrasted sexual assault cases with Eighth Amendment excessive force claims arising out of prison

---

[7] *Wood* cited three cases: *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (considering claim that prison guards "purposefully demeaned and sexually harassed [the plaintiff-prisoner] while strip searching him in front of female officers" (alteration in original)); *Berry v. Oswalt*, 143 F.3d 1127, 1131 (8th Cir. 1998) (considering claim by female prisoner that male guard "had attempted to perform nonroutine patdowns on her, had propositioned her for sex, had intruded upon her while she was not fully dressed, and had subjected her to sexual comments"); and *Watson v. Jones*, 980 F.2d 1165, 1165 (8th Cir. 1992) (considering claim by two male inmates that female correctional officer routinely "fondled them during pat-down searches"). In each case, the court concluded that the prisoner-plaintiffs presented colorable constitutional claims. *See Wood*, 692 F.3d at 1050.

guards' efforts to suppress disturbances or restore discipline, observing that when prison disturbances arise, "prison officials must make 'decisions in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* at 1049–50 (quoting *Hudson*, 503 U.S. at 6). That context requires courts to afford prison staff significant deference in their use of force; only "malicious and sadistic" use of force will rise to the level of a constitutional violation. *Id.* at 1050. The same concerns are not present when officers are accused of engaging in conduct for their own sexual gratification or to humiliate or degrade inmates.

Existing case law distinguishes Eighth Amendment claims arising from sexual assault and makes a few points very clear. First, sexual assault serves no valid penological purpose. *See Wood*, 692 F.3d at 1050; *Schwenk*, 204 F.3d at 1196 n.6. Second, where an inmate can prove that a prison guard committed a sexual assault, we presume the guard acted maliciously and sadistically for the very purpose of causing harm, and the subjective component of the Eighth Amendment claim is satisfied. *See Wood*, 692 F.3d at 1050. Finally, our cases have clearly held that an inmate need not prove that an injury resulted from sexual assault in order to maintain an excessive force claim under the Eighth Amendment. *See id.*; *Schwenk*, 204 F.3d at 1196. Any sexual assault is objectively "repugnant to the conscience of mankind" and therefore not *de minimis* for Eighth Amendment purposes. *Hudson*, 503 U.S. at 10 (quoting *Whitley*, 475 U.S. at 327).

The decision we issue today follows our prior holdings in *Schwenk* and *Wood*—that sexual assault has no place in prison—and it is entirely consistent with a steady drumbeat of recent case law from our sister circuits. *See, e.g.*, *Ricks v.*

*Shover*, 891 F.3d 468, 476 (3d Cir. 2018); *Washington v. Hively*, 695 F.3d 641 (7th Cir. 2012). As the Second Circuit observed in *Crawford v. Cuomo*, "societal standards of decency regarding sexual abuse and its harmful consequences have evolved," 796 F.3d 252, 256 (2d Cir. 2015), and all but two states have criminalized sexual contact between prisoners and guards. *See Crawford*, 796 F.3d at 259 n.5–6 (collecting statutes). Moreover, Congress passed the PREA unanimously in 2003 and the Attorney General promulgated National Standards to Prevent, Detect, and Respond to Prison Rape in 2012. *See* 77 Fed. Reg. 37,106 (June 20, 2012). These legislative enactments are the "clearest and most reliable objective evidence of contemporary values." *Atkins v. Virginia*, 536 U.S. 304, 312 (2002) (quoting *Penry v. Lynaugh*, 492 U.S. 302, 331 (1989)). *Schwenk* and *Wood* reflect our recognition of these societal standards.

*Schwenk* and *Wood* had no occasion to define "sexual assault" for Eighth Amendment purposes because it was apparent that the extreme misconduct alleged in those cases transgressed constitutional boundaries. We now hold that a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner. This definition recognizes that there are occasions when legitimate penological objectives within a prison setting require invasive searches. It also accounts for the significant deference courts owe to prison staff, who work in challenging institutional settings with unique security concerns. In a case like Bearchild's, where the allegation is that a guard's conduct began as an invasive procedure that

served a legitimate penological purpose, the prisoner must show that the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure.[8] Such a showing will satisfy the objective and subjective components of an Eighth Amendment claim.[9]

**B.**

With this definition in mind, and set against the backdrop established by *Hudson*, *Wood*, and *Schwenk*, we conclude that Instruction No. 12 misstated the elements necessary to establish liability for an Eighth Amendment violation arising from sexual assault.

Instruction No. 12 told the jury that Bearchild was required to demonstrate that Pasha used "excessive and unnecessary force under all of the circumstances"; that Pasha "acted maliciously and sadistically for the purpose of causing harm and not in a good faith effort to maintain or restore discipline"; and that Pasha "caused harm" to Bearchild. Far from being a good fit or perfectly reflecting the teachings of

---

[8] In the years since we decided *Schwenk* and *Wood*, other circuits have forged similar rules. *See Ricks*, 891 F.3d at 476; *Crawford*, 796 F.3d at 254.

[9] The dissent remarks that it is unclear whether the definition we announce today should be woven into an excessive force instruction, or whether it should replace Model Jury Instruction 9.26. But our task is to resolve the issues presented by Bearchild's appeal, not rewrite the model jury instructions. We do not hold that Model Jury Instruction 9.26 would be inapplicable in other cases, nor do we anticipate the facts of future cases. As the model jury instructions recognize, trial court judges must adapt instructions to accommodate the claims actually raised. *See* Manual of Model Civil Jury Instructions, Introduction.

*Schwenk* and *Wood*, as the dissent suggests, this instruction misstated the law in several significant ways.

The elements identified in Instruction No. 12 placed a greater burden on Bearchild than our law requires. As the dissent acknowledges, our case law dictates that all of the elements of a § 1983 sexual assault claim are established if a prisoner proves that a sexual assault occurred. *Wood*, 692 F.3d at 1046. Unfortunately, Bearchild's jury had no way of knowing that.

The jury was instructed that Bearchild was required to prove that any force exercised was both "excessive and unnecessary." They were not told that any act constituting sexual assault is by definition both excessive and unnecessary. *See id.* Similarly, the jury was instructed that Bearchild was required to show that Pasha acted maliciously and sadistically for the purpose of causing harm, without being told that a showing of sexual assault also satisfies this element. *See id.* The law does not require that Pasha's actions "caused harm to [Bearchild]," in the form of physical or lasting emotional injury. *Schwenk*, 204 F.3d at 1196 (observing that sexually abusive conduct is "offensive to human dignity," and violates the Eighth Amendment (quoting *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991))).

Instruction No. 12 directed the jury to consider several factors when deciding whether the three elements had been established. The first was "the extent of the injury" Bearchild suffered. This likely suggested that Bearchild was required to show the pat-down caused physical injury in order to establish an Eighth Amendment violation, a proposition plainly contrary to our case law. *See Wood*, 692 F.3d at 1050; *Schwenk*, 204 F.3d at 1196.

Instruction No. 12's direction to consider the "need to use force" and the "relationship between the need to use force and the amount of force used," also likely confused the jury because it was unaccompanied by an explanation that sexual assault does not require violent physical force, or indeed, any force. Consideration of "the need to use force," taken from the model instruction, fits when applied to a claim alleging that staff used excessive force to respond to an altercation. But directing a jury to consider the need to use force is misleading, at best, for juries considering sexual assault allegations. Further, in the circumstances of Bearchild's case, an instruction to consider the amount of force applied subtly suggests that some forms of sexual assault may be *de minimis* and do not rise to the level of a constitutional violation. We emphatically rejected that notion in *Wood* and we reaffirm here that sexual assault violates the Eighth Amendment regardless of the amount of force used. *See* 692 F.3d at 1045 ("Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment."); *see also Hively*, 695 F.3d at 643 ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant.").

Pasha suggests that any deficiencies in Instruction No. 12 were rendered harmless by the additional guidance provided by Instruction No. 13. Essentially, he argues that if the jury found that sexual abuse occurred pursuant to the PREA standard set out in Instruction No. 13, it could have applied that finding to Instruction No. 12's more general directions and returned a verdict in favor of Bearchild.

We are not persuaded. Several different problems were caused by the application of Instructions 11–13 to the facts of this case, and Instruction No. 13 did not cure them. First, Instruction No. 13 set forth one of twelve classes of conduct that constitute sexual abuse under the PREA, but the instruction did not explain whether the PREA's "sexual abuse" standard had anything to do with Bearchild's Eighth Amendment claim. Pasha's counsel explained to our panel and the trial transcript makes clear, that Pasha requested the instruction after the court ruled that Bearchild's proffered exhibits would be admitted. Pasha requested Instruction No. 13 to give context to the exhibits' brief mention of the PREA investigation that was triggered by Bearchild's administrative grievance. The instruction was left untethered from Instructions 11–12, likely because Pasha asked that it be added after the court had approved a set of instructions for the charge conference. Contrary to the dissent's suggestion, the district court viewed Instruction No. 12 as the one that would determine whether Bearchild was assaulted, not Instruction No. 13. Because even the district court did not contemplate Instruction No. 13 as being pertinent to Bearchild's Eighth Amendment claim, one could hardly expect the jury to make such an inference. *Deck v. Jenkins*, 814 F.3d 954, 983 (9th Cir. 2016) (concluding that trial judge's erroneous interpretation of jury instructions "vividly illustrates" that the jury "could no more than guess at the correct rule").

Second, the order of the instructions plays a role in our review of the entire charge. *See United States v. Warren*, 25 F.3d 890, 898 (9th Cir. 1994). The set of instructions used in this case began by explaining causation (Instruction No. 10), moved on to the two basic elements of every § 1983 claim (Instruction No. 11), identified the specific elements of an Eighth Amendment excessive force claim (Instruction

No. 12), and then, in Instruction No. 13, informed the jury of conduct that satisfies one of the PREA's standards for sexual abuse. We see no error in Instruction No. 10, as explained *infra*, but Instruction No. 11 told the jury that if Bearchild failed to prove any of the elements in Instruction No. 12, its verdict should be for the defendant. The jury may have read Instruction No. 12 and decided that because Bearchild suffered no physical injury, the facts did not support the inference that Pasha acted maliciously and sadistically. Thus, if the jury considered the instructions sequentially, it may have decided there was no liability without ever reaching Instruction No. 13.

The dissent takes issue with the panel's conclusion that a jury may not have reached Instruction No. 13 because "a jury is presumed to follow the trial court's instructions." *Deck*, 814 F.3d at 979. The dissent's objection misapprehends the nature of the flaw in Bearchild's jury instructions, and also misapplies *Deck*. The problem arose precisely because a jury is presumed to follow the court's instructions, and Instruction No. 12 directed the jury that Bearchild "must prove the following elements," without explaining that if they found the pat-down became a sexual assault, Bearchild established an Eighth Amendment violation.

The jury was not given a definition of sexual assault for Bearchild's Eighth Amendment claim; Instruction No. 13 informed the jury of the standard applicable to Bearchild's administrative grievance. Even if we were to assume that the jury applied an acceptable definition, it had no way of knowing that *any* element of Instruction No. 12 was per se satisfied if it decided the pat-down became a sexual assault, let alone *every* element. Because Instruction No. 11 directed the jury to find in Pasha's favor if it concluded that Bearchild

failed to prove any of the elements in Instruction No. 12, "[t]he instruction may have short-circuited the jury's deliberation by offering a path to finding for [Pasha] without requiring that it assess all of the relevant [standards]." *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1197 (9th Cir. 2019).

Pasha argues that reliance on *Schwenk* and *Wood* is misplaced because the principles announced in those cases arose in a summary judgment context, where the disputed facts were viewed in the light most favorable to the plaintiff. Pasha contends that Bearchild mistakenly assumes that, at trial, he was entitled to a presumption that a sexual assault occurred. This argument also misses the mark. Our task is to determine whether the instructions correctly identified the elements Bearchild was required to prove at trial. The portions of *Schwenk* and *Wood* upon which we rely set out the applicable law governing Eighth Amendment sexual assault claims, and the legal principles articulated in these cases are not influenced by the procedural requirement that the facts are viewed in the light most favorable to the non-moving party at the summary judgment stage. Contrary to Pasha's assertions, our case law does not bake in an assumption that a sexual assault took place. Rather, it simply holds that where a plaintiff proves a prison staff member sexually assaulted him or her, the prisoner necessarily establishes an Eighth Amendment violation. *See City of Long Beach v. Standard Oil Co.*, 46 F.3d 929, 936 (9th Cir. 1995) (holding that plaintiffs are entitled to "instructions on the theories of their case if they are supported by the evidence").

We are not persuaded by Pasha's argument that he would have been hindered in presenting his defense if the instructions had been tailored to fit an Eighth Amendment sexual assault claim. In fact, Pasha could have defended the

case before a properly instructed jury in exactly the same way he did: by arguing that his pat-down search was not an unconstitutional sexual assault, and was instead a necessarily invasive but permissible pat-down for contraband.

## C.

Bearchild did not object to Instruction No. 12 at trial, so we next consider whether the instruction was plainly erroneous and whether the error affected Bearchild's substantial rights. We conclude that both requirements are satisfied.

An error is plain when an instruction "adds an obviously non-existent element to the plaintiff's burden of proof." *Hoard*, 904 F.3d at 790. *Schwenk* and *Wood* established legal principles applicable to Eighth Amendment cases dealing with sexual assault, and the instructions here impermissibly deviated from those standards. Thus, on the facts of this case, the error is not merely that the instructions were not a "model of clarity," *C.B.*, 769 F.3d at 1021, nor simply "less than artful." *United States v. Hegwood*, 977 F.2d 492, 496 (9th Cir. 1992).

The dissent argues that the lack of a model instruction specifically tailored to this type of claim suggests that a correct formulation is *not yet* plain or obvious. But the model instructions are not a compendium of all that is plain or obvious; they are "prepared to help judges communicate more effectively with juries," and they may require modification in a particular case. Manual of Model Civil Jury Instructions, Introduction; *see also, e.g.*, *United States v. Paul*, 37 F.3d 496, 501 (9th Cir. 1994) (holding that use of instructions closely tracking the model instructions constituted plain

error); *Hegwood*, 977 F.2d at 496 (observing that use of model instruction would have constituted plain error). To support its plain error argument, the dissent cites to a statement in the model instructions that "[t]he Committee has not formulated an instruction that relates to sexual harassment claimed by an inmate."[10] But the dissent fails to note that the same source directs readers to *Wood* and *Schwenk*, thereby signposting that Model Instruction 9.26, unadapted, is not the right fit for a sexual assault claim. *See id.*

The third prong of the plain error test requires that we consider whether the error prejudiced the complaining party or otherwise affected his or her substantial rights. *Hoard*, 904 F.3d at 790. Even in the case of plain error review, "[w]hen the trial court erroneously adds an extra element to the plaintiff's burden of proof, it is unlikely that the error will be harmless." *Id.* at 791 (alteration in original) (quoting *Sanders*, 657 F.3d at 781). Bearchild introduced evidence from which a jury could have found that Pasha stroked and fondled him for the purpose of causing humiliation or for Pasha's own sexual gratification. We do not know whether the jury found this testimony credible, but even if it did, it likely would not have imposed liability because Instruction No. 12 misdirected the jury. We have no difficulty concluding that Instruction No. 12 prejudiced Bearchild.

The dissent asserts that even if the jury had been properly instructed, it still would not have assigned liability to Pasha. But the dissent's wholesale adoption of Pasha's version of events includes several unsupported assumptions. For example, the dissent asserts that Bearchild "conceded" he had claimed the sexual assault lasted for five minutes, despite not

---

[10] Manual of Model Civil Jury Instructions, at 194.

mentioning this in his original grievance. It also asserts that Bearchild affirmed that Pasha only momentarily grabbed his penis. The trial transcript shows that Bearchild testified Pasha engaged in a pat-down from behind, and then walked around to the front of his body. On cross-examination, Bearchild agreed that the groping and squeezing lasted five minutes, that the inappropriate touching continued after Pasha came around to his front, and that Pasha asked him to pull his pants and underwear away from his body. Bearchild never conceded that Pasha's assault was momentary.

The original grievance makes no mention of duration, so it can hardly be deemed contradictory to Bearchild's testimony, and although the dissent asserts that inmate Ball testified the sexual assault took place entirely from behind and lasted over five minutes, Ball merely testified that the pat-down *started* from behind and lasted "a little over five minutes." He was not asked whether Pasha walked around to the front of Bearchild's body. The dissent's view that Bearchild corroborated Pasha's defense by admitting that a bulge in his waistband required an additional pat-down misinterprets Bearchild's claim. Bearchild did not claim that Pasha had no justification to begin his pat-down; he claimed that the pat-down became sexually assaultive.

Prong four of the plain error test asks whether "the error seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *C.B.*, 769 F.3d at 1019 (quoting *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 36 (1st Cir. 2006)). We do not hesitate to conclude that jury instructions that overstate or misstate the elements a *pro se* prisoner must prove undermine the fairness of judicial proceedings. Bearchild alleged that Pasha engaged in serious misconduct that degraded his personal dignity and undermined public

confidence in the integrity of our penological institutions. Because his ability to pursue his claim was fundamentally diminished by the jury instructions in this case, the final prong of the plain error test is satisfied.

## V.

We remand this case for a new trial with appropriate jury instructions on the substantive law applicable to Bearchild's claim. We find no plain error in Instruction No. 10, but because we remand for a new trial, we briefly pass on Bearchild's claim that Instruction No. 10 misstated the law with respect to § 1983 causation. Instruction No. 10 told the jury:

> In order to establish that the acts of the defendant Larry Pasha deprived the plaintiff of his particular rights under the United States Constitution as explained in later instructions, the plaintiff must prove by a preponderance of the evidence that the acts were so closely related to the deprivation of the plaintiff's rights as to be the cause of the ultimate injury.

Bearchild contends on appeal that this instruction added an additional, and legally unnecessary, element of causation. Bearchild did not object to this instruction, so we review for plain error.[11]  *See C.B.*, 769 F.3d at 1016.

---

[11] Bearchild argues the court should review Instruction No. 10 *de novo* under an expanded version of the pointless formality exception. We have said "[w]e will not punish a pro se litigant with plain error rather than de novo review simply because he failed to say the words 'I object' when the trial judge and defendants knew why the instruction might be

We start from first principles: "[i]n a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008) (internal citations omitted); *see also Arnold v. I.B.M. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (holding that a § 1983 plaintiff must establish both actual and proximate causation).

Despite Bearchild's protestations to the contrary, Instruction No. 10 does no more than restate the principle of proximate causation. It is true that this instruction derives from cases that involve *Monell*-type municipal liability claims, where proximate causation is often a contested issue. It also arguably duplicates later instructions. But Instruction No. 10 does not inaccurately state the law with respect to Bearchild's burden of persuasion on causation.

*Clem v. Lomeli*, 566 F.3d 1177 (9th Cir. 2009), another § 1983 case, is not to the contrary. There, we remanded for a new trial after the district court gave the jury a nearly identical instruction to Instruction No. 10. *Id.* at 1181, 1183. The difference is that in *Clem*, the plaintiff was proceeding on a deliberate indifference theory—i.e., the plaintiff alleged that the defendant's *failure to act* gave rise to § 1983 liability, and the instruction only allowed the jury to find in the plaintiff's favor if "the *act* of defendant Lomeli deprived [Clem] of his particular rights[.]" *Id.* at 1180 (first alteration in original) (emphasis added). Thus, the instruction misstated the law

---

erroneous and what the objection would have been," *Chess v. Dovey*, 790 F.3d 961, 971 (9th Cir. 2015), but we conclude that Instruction No. 10 survives either standard of review.

applicable to the plaintiff's "legitimate 'failure to act' theory of liability[.]" *Id.* at 1182. Bearchild's case materially differs because his theory of liability is tied directly to Pasha's affirmative actions—there is no allegation that anything Pasha *failed to do* violated Bearchild's Eighth Amendment rights. The problems we identified in *Clem* are not present in this case, and we discern no plain error in Instruction No. 10.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[12]

CALLAHAN, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that the district court's decision not to continue the trial *sua sponte* was within its broad discretion and was not "arbitrary or unreasonable." *United States v. Kloehn*, 620 F.3d 1122, 1127 (9th Cir. 2010) (quoting *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985)). However, the district court's use of the Ninth Circuit's model jury instruction for Eighth Amendment excessive force claims, if error, was not plain error warranting a new trial, particularly in light of the district court's additional instruction defining "sexual abuse" in a manner well-tailored to the facts of the case. Contrary to the majority's conclusion, these instructions—though imperfect—did not require Bearchild to prove "actual force" and "physical injury," and they did not state or imply that certain forms of prisoner sexual abuse fall outside the Eighth

---

[12] Costs are awarded to Bearchild.

Amendment's protections against "cruel and unusual punishments." Accordingly, I would affirm the jury's verdict.

After a two-day trial, the jury in this case rejected Bearchild's claim that a prison guard's brief touching of his groin area in the course of an otherwise lawful, clothed-body pat-down search amounted to excessive force in the form of sexual abuse. For good reason: Bearchild's own testimony undercut the credibility of this allegation and suggested that the prison guard acted reasonably and without malice after detecting a suspicious lump at the waistband of Bearchild's pants. Additional witness testimony contradicted portions of Bearchild's account and corroborated the testimony of Sergeant Pasha, the prison guard who conducted the pat-down. In other words, any imperfection in the jury instructions had no effect on the verdict; a new jury, more clearly informed that sexual abuse does constitute "excessive force" under the Eighth Amendment, would not decide the case any differently. Because Bearchild has failed to demonstrate prejudice and this case does not present the type of "manifest injustice" required for reversal under our court's precedents, I respectfully dissent from that portion of the court's holding and would affirm the judgment below.

## I.

It has been nearly six years since Bearchild, an inmate in the Montana prison system, first alleged that prison guard Pasha used excessive force against him during a routine, clothed-body pat-down search of Bearchild's legs and groin area. At the time of the pat-down, Bearchild had just exited a bathroom and was walking with two fellow inmates to an educational course at the prison. Later that day, Bearchild

submitted a grievance through the prison's grievance system. Lieutenant Blaz was assigned to conduct a Prison Rape Elimination Act (PREA) investigation. Over the next week, Blaz interviewed multiple witnesses, including Bearchild and Pasha, reviewed various documents and incident reports, and wrote a detailed report of investigation. Bearchild's primary complaint was that Pasha had him pull his pants and underwear away from his waist in order to determine if he was carrying contraband in his waistband. This, Bearchild complained, was embarrassing and caused him to become emotional due to memories of a childhood sexual assault.

Blaz ultimately concluded that Pasha's clothed-body search of Bearchild complied with Montana State Prison Procedures and found "no basis" for Bearchild's allegations of sexual assault and staff misconduct. In his letter to Bearchild explaining his decision, Blaz wrote:

> The elements of your complaint have been carefully examined. It is important that you understand that a pat search is somewhat intrusive by its nature. It requires that the staff member engage in a level of touch that allows detection of foreign objects. Pat searches can range from a minor frisk to a time consuming and more complete process. Detection and prevention of contraband within the facility is a valid penological interest and absolute necessity [sic] to the safety and security of the facility. There appears to be no merit to the complaints of a sexual nature that you have attributed to the pat search therefore your claim is unfounded. Staff will continue to perform their duties

related to the safety and security of this institution.

Over the next four years, Bearchild continued to pursue his grievance and eventually filed suit in the Montana district court pursuant to 42 U.S.C. § 1983, alleging that Pasha's clothed-body pat-down search constituted cruel and unusual punishment in violation of the Eighth Amendment. At trial, the district court's preliminary instructions described the parties' factual claims and the issues to be determined by the jury as follows:

> The plaintiff Dewayne Bearchild asserts that the defendant Larry Pasha used excessive force and sexually assaulted him during a clothed body pat search by fondling plaintiff's penis and testicles for approximately five minutes. The plaintiff has the burden of proving these claims.

> The defendant Larry Pasha denies that the pat search of Mr. Bearchild was performed with excessive force or sexual intent. The defendant claims that the pat search was properly conducted in a good faith effort to maintain order within the prison, lasted less than one minute, and that plaintiff did not suffer any injury.

Bearchild represented himself *pro se*. In his trial testimony, he described the incident he characterizes as a "sexual assault":

Now a pat search is a pat (indicating). Well, his became like this (indicating). It was no more a pat search. He was looking for the medicine bag. He couldn't find it. So then his hands started coming down. And that's when he reached down, went up the right leg, went by the crotch, kind of grabbed my testicles, and then he went down to the left leg and back up again. Then that's when he felt the object, he said in my waistband.

Now, remember, I was rushing to take a—to urinate. And when I heard, "Last call," I didn't actually finish urinating, and *my penis didn't have enough time to drop down into the pants, so it was stuck*.

So when I walked out, that's when he—he turned around. He felt it when he was behind me. He said, "What is this?"

And I'm now like this, looking straight forward. "That's my penis."

Well, apparently he didn't believe me, so he came around this way. Now he's in front of me. He grabs this underneath. He is squeezing. Then he's rubbing this way. "What is this?"

Again, "It's my penis. You just got through touching it."

> . . . . And when I turned around this way, that's when he had me pull my underwear and the pants away from my body so he can view down inside. *Now not seeing there's no weapons, he sat there*.

(Emphasis added.)

On cross-examination, Bearchild affirmed this sequence of events, including Pasha's momentary grabbing of his penis through his clothes. He conceded that he had, at times, claimed the sexual assault lasted for five minutes, even though he never mentioned this when he filed his original grievance. And he reiterated that when the pat-down search began, his penis was still caught in his waistband from his recent bathroom visit, prompting Pasha to examine the lump further.

The testimony of Bearchild's main eyewitness, inmate Ball, was inconsistent with Bearchild's account. Ball testified that the sexual assault took place entirely from behind and lasted over five minutes, in full view of multiple inmates and prison staff, all of whom were laughing throughout the incident.

Pasha did not dispute that the pat-down search of Bearchild's groin area took place. Instead, he denied Bearchild's allegations of excessive touching and Bearchild's characterization of the incident as a sexual assault. He presented multiple witnesses in his defense, including witnesses who discussed (and demonstrated) the prison's policies and procedures for pat-down searches of an inmate's groin area. Significantly, both Pasha and an eyewitness, Officer Schlosser, testified that Pasha detected a strange

bulge in Bearchild's waistband during the initial pat-down, and that *this*—not a desire to engage in malicious and sadistic behavior—was what prompted a focused follow-on search of Bearchild's waist and groin area to ensure that the object was not contraband. This was consistent with Pasha's original statement to the PREA investigator. Also consistent with his original statement, Pasha stated that he had Bearchild pull the waistband of his pants and underwear away from his body so that he could visually ensure he was not carrying any contraband. Both Pasha and Schlosser testified that the pat-down lasted only a few seconds and involved no excessive touching of Bearchild's groin area.

As noted in the majority's opinion, the district court used our standard instruction for Eighth Amendment excessive force claims, Ninth Circuit Model Civil Jury Instruction 9.26 (Instruction No. 12), and Bearchild did not object. Immediately following that instruction, the district court provided an additional instruction at Pasha's request (Instruction No. 13), and again Bearchild did not object. That instruction, adopted from the PREA, defined "sexual abuse" as "intentional contact, either directly or through the clothing of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks that is unrelated to official duties or where the staff member has the intent to abuse, arouse, or gratify sexual desire."

In his opening and summation, Pasha did not argue that sexual abuse, as defined by Instruction No. 13, falls short of the requirements for proving excessive force as set forth in Instruction No. 12. Nor did he argue that sexual contact took place but was consensual. Instead, he argued—consistent with the preliminary instructions—that his pat-down of Bearchild's groin area lasted no longer than necessary, was

conducted in good faith and without malicious intent, was not excessive or inappropriate, and was part of Pasha's duty of maintaining discipline at the prison. In other words, he was just doing his job—a job that, for better or for worse, requires him to regularly conduct pat-down searches of inmates' leg and groin areas in order to combat the flow of contraband within the prison.

## II.

As the majority recognizes, because Bearchild did not object to Instruction No. 12, we may review that instruction for plain error only. Fed. R. Civ. P. 51(d)(2); *C.B. v. City of Sonora*, 769 F.3d 1005, 1016 (9th Cir. 2014) (en banc). "Such review permits us to notice and correct a district court's deviation from a legal rule only if three conditions are met": (1) there is error; (2) the error is plain or obvious; and (3) the error affects the moving party's substantial rights (*i.e.*, the error must be prejudicial). *United States v. Jimenez*, 258 F.3d 1120, 1124 (9th Cir. 2001); *accord City of Sonora*, 769 F.3d at 1018. This third inquiry usually means that the error "must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). If all three of these conditions are met, we should exercise our discretion to correct plain error "only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *City of Sonora*, 769 F.3d at 1018–19 (quoting *Olano*, 507 U.S. at 732 (internal quotation marks and citation omitted)). The burden for meeting the third and fourth prongs of the plain error test rests with the appellant. *Olano*, 507 U.S. at 734–36; *United States v. Vonn*, 535 U.S. 55, 62–63 (2002).

The Supreme Court has explained that "appellate-court authority to remedy [an] error" under the plain error test "is strictly circumscribed." *Puckett v. United States*, 556 U.S. 129, 134 (2009).[1] "There is good reason for this; 'anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.'" *Id.* (quoting *United States v. Padilla*, 415 F.3d 211, 224 (1st Cir. 2005) (Boudin, C. J., concurring)). Thus strict adherence to the plain error standard is critical, as it helps "to induce the timely raising of claims and objections, which gives the district court . . . [the court that is] ordinarily in the best position to determine the relevant facts and adjudicate the dispute . . . the opportunity to consider and resolve them." *Id.*

We have observed that the plain error standard of review in the civil context is even stricter than the plain error standard applied in criminal cases. *City of Sonora*, 769 F.3d at 1016. Because "the stakes are lower in the civil context . . . plain errors should 'encompass[ ] only those errors that reach

---

[1] As the Fifth Circuit has observed, the plain error standard "mandates considerable deference to the district court and focuses on whether the severity of the error's harm demands reversal, . . . not whether the district court's action . . . deserves rebuke." *United States v. Mendoza-Velasquez*, 847 F.3d 209, 212–13 (5th Cir. 2017). "After all, 'plain-error review is not a grading system for trial judges.'" *Id.* (quoting *Henderson v. United States*, 568 U.S. 266, 278 (2013)). "The appellant's burden, then, 'is difficult, as it should be.'" *Id.* (quoting *Puckett*, 556 U.S. at 135 (internal citation and quotation marks omitted)). Errors warranting reversal under the plain error standard "are rare and egregious such that they would shock the conscience of the common man, serve as a powerful indictment against our system of justice, or seriously call into question the competence or integrity of the district judge." *Id.* (internal quotation marks and citations omitted).

the pinnacle of fault envisioned by [this] standard." *Id.* at 1018 (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (internal citation and quotation marks omitted)); *see Draper v. Rosario*, 836 F.3d 1072, 1085 (9th Cir. 2016) (plain error in the civil context requires reversal only in "extraordinary cases," where "review is necessary to prevent a miscarriage of justice") (quoting *Hemmings*, 285 F.3d at 1093 (internal citation and quotation marks omitted)); *see also Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 341 (3d Cir. 2005) ("Plain error review is discretionary—it should be exercised sparingly and should only be invoked with extreme caution in the civil context.") (internal quotation marks omitted). "Accordingly, when reviewing civil jury instructions for plain error, [this court] consider[s] the costs of correcting an error, and—in borderline cases—the effect that a verdict may have on nonparties." *City of Sonora*, 769 F.3d at 1018 (citing Fed. R. Civ. P. 51 advisory committee's note; *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986); *United States v. Petri*, 731 F.3d 833, 839 (9th Cir. 2013)).[2]

Applying these principles, we have held that, even when a jury instruction is "not a model of clarity," reversal under the plain error standard is unwarranted unless the instruction

---

[2] *See also Elder v. Holloway*, 984 F.2d 991, 998 (9th Cir. 1993) (Kozinski, J., dissenting) ("The purpose of Rule 51 is to require timely objections to instructions so the trial judge has a chance to change them before the jury retires to consider its verdict. Without it, a party who fails to object to a defective instruction would get two bites at the apple. If the party gets a favorable verdict despite the bad instruction, it wins; if the verdict is unfavorable, the party still has a shot at a new trial by appealing on the ground that the instruction was defective. Moreover, the cost of an appellate reversal based on faulty jury instructions—a completely new trial—is obviously very high.").

clearly misstates the law. *Id.* at 1021; *see Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005) ("In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered.") (internal citation and quotation marks omitted); *United States v. Hegwood*, 977 F.2d 492, 496 (9th Cir. 1992) (no plain error where the court blended language from the relevant criminal statute and a model jury instruction, even though the resulting instruction in its entirety was "less than artful").[3] Likewise, we should not reverse for plain error unless it is "sufficiently clear at the time of trial" that the district court's instruction was impermissible. *Hoard v. Hartman*, 904 F.3d 780, 790 (9th Cir. 2018) (quoting *Draper*, 836 F.3d at 1085); *see Henderson*, 568 U.S. at 278 (noting that "lower court decisions that are questionable but not *plainly* wrong (at time of trial or at time of appeal) fall outside" the scope of plain error review). Accordingly, when a district court uses the relevant model jury instructions based on the offense or claim alleged, we generally will find reversible plain error only when that instruction (1) fails to include a necessary element, or (2) adds an obviously non-existent one. *Hoard*, 904 F.3d at 791; *see also United States v. Warren*, 984 F.2d 325, 327–28 (9th Cir. 1993); *Hegwood*, 977 F.2d at 496.

---

[3] *See also Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 293–94 (5th Cir. 2002) (stating that to reverse for plain error in civil jury instructions, the court "must find an obviously incorrect statement of law that was probably responsible for an incorrect verdict, leading to substantial injustice"); *Teixeira v. Town of Coventry ex rel. Przybyla*, 882 F.3d 13, 18 (1st Cir. 2018) (observing that reversals on plain error review of jury instructions are "hen's-teeth rare").

**III.**

Here, the district court neither omitted a necessary element nor added a non-existent one when it used Ninth Circuit Model Civil Jury Instruction 9.26, our standard instruction for Eighth Amendment excessive force claims. The elements listed in Instruction No. 12, which closely paralleled Model Jury Instruction 9.26, appropriately reflected the core judicial inquiry for such claims: "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). Likewise, the elements listed in Instruction No. 12 essentially matched the excessive force allegation as presented by Bearchild in his testimony: (1) that Pasha used "excessive and unnecessary force" by fondling Bearchild's groin beyond what was required for the pat-down search; (2) that this touching constituted sexual abuse and was not "a good faith effort to maintain or restore discipline"; and (3) that the sexual abuse was harmful to Bearchild.

The majority claims that Instruction No. 12 "misstated the elements necessary to establish liability for an Eighth Amendment violation arising from sexual assault" by requiring Bearchild to show "physical injury" and by suggesting that "sexual assault . . . require[s] violent physical force." But this is not a fair reading of the instruction, which uses neither of these terms. The plain language of the elements portion of the instruction requires the jury to consider only whether Pasha "used excessive and unnecessary force under all the circumstances" and whether he "acted maliciously and sadistically for the purpose of causing harm *and not* in a good faith effort to maintain or restore discipline." The dichotomy presented by these

elements—excessive and abusive behavior on the one hand, good-faith law enforcement activity on the other—not only appropriately addressed the "core judicial inquiry" of Bearchild's excessive force claim, it was a good fit for contrasting the factual allegations of the parties, which centered around Pasha's intent and the duration of the pat-down.

Perhaps the factors listed in the second half of Ninth Circuit Model Civil Jury Instruction 9.26 are not perfectly tailored to claims involving non-forcible sexual assault. Could the district court have modified these factors slightly to emphasize that proof of physical injury is not required? Probably. Could the court have added a sentence at the end of Instruction No. No. 13 to clarify that if the jury believed Pasha sexually abused Bearchild, then the elements of excessive force and willful and malicious intent are necessarily met? Of course.

But this is plain error review, and so the question is not whether the trial judge failed to achieve perfection. Rather, the issue is whether the standard excessive force elements listed in Model Jury Instruction 9.26 are *legally erroneous* when the claim involves sexual abuse rather than some other kind of physical abuse. Nothing in the model instructions or our case law says that they are. And therefore, by definition, the alleged instructional error perceived by the majority *cannot be* plain or obvious. *See Olano*, 507 U.S. at 734 (in order for an error to be "plain," it must be "obvious" or "clear under current law"). In fact, the comment to the model instruction explicitly states that "[t]he Committee has not formulated an instruction that relates to sexual harassment claimed by an inmate." Ninth Cir. Model Civil Jury Instructions, 9.26 Particular Rights—Eighth

Amendment—Convicted Prisoner's Claim of Excessive Force, Comment (2017 ed.). The lack of a model instruction tailored for this type of claim suggests, if anything, that the yet-to-be-issued correct formulation of an instruction (assuming it should differ from the standard instruction for an Eighth Amendment excessive force claim) is *not yet* plain or obvious—at least not for trial judges lacking the power of clairvoyance.[4]

---

[4] In his brief, Bearchild seems to suggest that the Montana district court should have looked to the unpublished case of *Cleveland v. Curry*, No. 07-CV-02809-NJV, 2014 WL 690846 (N.D. Cal. Feb. 21, 2014) for guidance on how to appropriately modify the elements of Model Jury Instruction 9.26 in an excessive force case involving alleged sexual abuse. In *Cleveland*, the district court instructed the jury as follows:

> Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishment." In order to prove the defendant deprived each plaintiff of his Eighth Amendment right, each plaintiff must prove by a preponderance of the evidence that defendant . . . sexually assaulted one or more of the Plaintiffs.
>
> In determining whether defendant . . . sexually assaulted one or more of the Plaintiffs in this case, consider the need to use force in conducting the search, the relationship between that need and the amount of force used, and whether defendant applied the force in good faith.

2014 WL 690846, at *11–12. While I agree *Cleveland* provides a good example of how district courts might exercise their discretion to fashion jury instructions in similar cases in the future, the *Cleveland* instructions are not "current law" for the purpose of plain error review.

The majority asserts that our decisions in *Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) and *Wood v. Beauclair*, 692 F.3d 1041 (9th Cir. 2012) make it 'plain and obvious' under current law that the district court committed instructional error. But neither of those cases addressed Model Jury Instruction 9.26. Instead, they stand for the non-objectionable proposition that there is no penological justification for a prison guard to sexually assault a prisoner, and that if a plaintiff proves a sexual assault occurred then he or she necessarily has met the elements of an excessive force claim under 28 U.S.C. § 1983. *See Schwenk*, 204 F.3d at 1197; *Wood*, 692 F.3d at 1050. Significantly, both *Schwenk* and *Wood* arose in the summary judgment context—in *Schwenk*, we rejected the defendant's argument for qualified immunity; in *Wood*, we rejected the defendant's consent defense—and therefore neither case addressed the specific issue here: the appropriateness of the excessive force jury instruction when the defendant does not deny that the touching occurred but instead argues that it was not sexual in nature and served a valid, penological purpose.

Bearchild also cites the Tenth Circuit's decision in *Giron v. Corrections Corporation of America*, 191 F.3d 1281 (10th Cir. 1999), which we cited in *Wood*. In *Giron*, the defendant prison guard did not deny the inmate's allegations of sexual intercourse, but instead argued at trial that the acts were consensual. *Id.* at 1284. The *Giron* district court used an excessive force instruction similar to Instruction No. 12 here, and the Tenth Circuit found the instruction plainly erroneous because it imposed an "additional hurdle [on Ms. Giron] of showing that the coercion involved malice under a test *primarily designed for a prison guard's use of force to maintain order*." *Id.* at 1290 (emphasis added). Bearchild argues that *Giron* is dispositive here. Not so: unlike the

defendant in *Giron*, Pasha did not argue consent; instead, he denied that the touching was sexual in nature or that it fell outside the scope of a lawful, clothed-body pat-down wherein he reasonably suspected Bearchild of carrying contraband in his waistband.

This difference is critical. If the facts in this case were similar to the facts in *Giron* or *Wood*—that is, if Pasha's defense was that sexual assault cannot, by definition, constitute "excessive force"—then I might agree there was plain and obvious error. But Pasha asserted that there was no sexual assault, and at no time did he argue that sexual abuse of inmates by prison guards falls outside of Eighth Amendment protections against cruel and unusual punishment. Thus the majority's holding that "where a plaintiff proves that a prison staff member committed a sexual assault, the prisoner necessarily establishes an Eighth Amendment violation," is a correct statement of law but inapplicable to the factual dispute at issue in this case.

The jury instructions in this case accurately (if imperfectly) reflected our holdings in *Schwenk* and *Wood*. Even if there was error, it was not plain.

## IV.

Even if the district court committed plain and obvious error when it used the Ninth Circuit's standard excessive force instruction in a case involving alleged sexual abuse, Bearchild still has the burden of meeting the third and fourth prongs of the plain error test: (1) prejudice (i.e., that the outcome of the trial would have been different but for the instructional error); and (2) that the error "seriously affect[s] the fairness, integrity or public reputation of judicial

proceedings." *City of Sonora*, 769 F.3d at 1018–19 (internal quotation marks and citation omitted). He has not done so.

First, any potential prejudice stemming from Instruction No. 12 was cured by Instruction No. 13. This instruction defined sexual abuse of an inmate to include "intentional contact, either directly or through the clothing of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks that is unrelated to official duties or where the staff member has the intent to abuse, arouse, or gratify sexual desire." Read in conjunction with Instruction No. 12, Instruction No. 13 effectively informed the jury that touching an inmate's groin could, depending on the facts, amount to "excessive and unnecessary force under all the circumstances" as opposed to a good-faith effort to follow the prison's security policies and practices relating to pat-down searches. This reading also comports with common sense, which the jury members presumably did not abandon when they considered the evidence and the charge.

The majority, however, speculates that "the jury may have decided there was no liability without ever reaching Instruction No. 13." But this results-driven surmise ignores clear precedent that "a jury is presumed to follow the trial court's instructions." *Deck v. Jenkins*, 814 F.3d 954, 979 (9th Cir. 2016) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)). The majority cites *United States v. Warren*, 25 F.3d 890, 898 (9th Cir. 1994) for the proposition that "the order of the instructions plays a role in our review of the entire charge." True, but in *Warren* we did not hold or suggest that a jury might ignore certain instructions depending on their sequencing, or that we may *presume* that the jury did so if we disagree with its final judgment. Instead, we took the exact opposite approach, emphasizing the importance of

"consider[ing] how the jury would have reasonably understood the challenged instruction in the context of the instructions as a whole." *Warren*, 25 F.3d at 897.[5]

Second, Bearchild's own testimony severely undercuts the credibility of his claim. Not only did he contradict himself multiple times, he corroborated Pasha's defense by admitting that at the time of the pat-down, his penis was caught in the waistband of his pants, causing Pasha to have to perform an additional pat-down search to determine whether the bulge he detected was contraband. In addition, Bearchild's testimony was contradicted by his own eyewitness, whose description of the assault diverged in material respects from Bearchild's testimony. Pasha's defense witnesses, on the other hand, all tended to corroborate his description of events and support the view that this was a lawful—albeit uncomfortable—pat-down search with a legitimate, penological purpose. The jury was also provided with the original PREA investigator's report and notes of investigation, which corroborated Pasha's account and further undermined Bearchild's claim. Thus, even if the jury had been instructed more precisely on the relationship between sexual abuse and excessive force, it still would not have assigned liability to Pasha.

The majority overlooks these facts, distorts Bearchild's *actual* trial testimony, and ignores the reasonableness of Pasha's suspicion in order to have "no difficulty concluding that Instruction No. 12 prejudiced Bearchild" and

---

[5] Taking this approach in *Warren*, we held that the challenged instruction, "when consider[ed] . . . in the context of the other instructions given" at trial, did not inappropriately shift the burden of proof to the defendant. 25 F.3d at 898.

"undermine[d] the fairness of judicial proceedings." This conclusion insists that Instruction No. 12 required proof of "physical injury" (those words appear nowhere in the instruction), and ignores our statement in *City of Sonora* that the discretion to recognize plain error in civil jury instructions should be exercised only when the error reaches the "pinnacle of fault envisioned by" the standard. 769 F.3d at 1018 (internal citation and quotation marks omitted). We further instructed that courts first must consider "the costs of correcting an error, and—in borderline cases—the effect that a verdict may have on nonparties." *Id.* (internal citations omitted). By remanding for a new trial, the majority compounds the costs to Pasha and to the justice system further, even though there is no reasonable likelihood that the result will be any different at Bearchild's next trial. The majority's casual treatment of the third and fourth prongs of plain error review opens the "plain error floodgates" that the Supreme Court warned us to guard against in *Henderson*, 566 U.S. at 278.[6]

---

[6] It is unclear from the majority's opinion whether it intends in future cases that its proposed "definition" ("[A] prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner"), be woven into the standard excessive force instruction as was done in *Cleveland*, *see supra* note 4, or if this new language is supposed to be used by district courts *in place of* the elements and factors contained in Model Jury Instruction 9.26. This lack of clarity in the majority's proposed definition as well as its relationship with our model jury instruction will sow confusion in the district courts and generate additional appeals.

## V.

Here, once again, we make "a hash of the plain error standard." *United States v. Dreyer*, 705 F.3d 951, 953 (9th Cir. 2013) (Tallman, J., dissenting). In this case, no reasonable juror would conclude, based on a fair reading of *the instructions* as a whole, that sexual abuse "does not count" as cruel and unusual punishment unless it causes physical injury. Likewise, no reasonable juror would conclude, based on a fair reading of *the evidence* at trial, that Bearchild's Eighth Amendment right to be free from cruel and unusual punishment was violated when a lawful pat-down of Bearchild's groin area was extended after Pasha discovered a suspicious lump in Bearchild's waistband. Any imperfection in the jury instructions had nothing to do with the outcome.

Dewayne Bearchild had his day in court. Giving him a second bite at the apple on the grounds of instructional error, despite his failure to object at trial, will unnecessarily compound the costs of litigation in this case and will further incentivize litigants to make *un*timely objections in future cases. Because Bearchild has failed to demonstrate prejudice and this case does not present the type of "manifest injustice" required for reversal under prongs three and four of the plain error test, I respectfully dissent.